**David KLUMB, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–859.**

Court of Appeals of Alaska.

Jan. 31, 1986.

William A. Davies, Asst. Public Defender, Fairbanks, and Dana Fabe, Public Defender, Anchorage, for appellant.

James V. Gould, Asst. Atty. Gen., Office of Special Prosecutions and Appeals, An-

chorage, and Harold M. Brown, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

### OPINION

COATS, Judge.

David Klumb was convicted of murder in the second degree, AS 11.41.110. We believe the trial court erred in instructing the jury on self-defense, and therefore reverse Klumb's conviction.

Klumb met James Wulff in 1981. Wulff eventually agreed to lease part of his five-acre tract to Klumb so that Klumb could build a cabin. Klumb worked on the cabin but never finished it, and finally Klumb moved out, leaving a great deal of personal belongings stored in the cabin.

In the fall of 1983, Wulff began negotiating for purchase of the cabin and cancellation of the lease. Klumb agreed to a price of $25,000, towards which Wulff immediately paid $17,500. The balance was never paid, nor did Klumb ever move his belongings out of the cabin.

According to Klumb, Wulff became increasingly apprehensive regarding Klumb's failure to vacate the cabin. Klumb testified that Wulff threatened to take Klumb's belongings out and burn them, plus Wulff threatened violence towards Klumb's wife. Klumb further testified that he had recently seen Wulff handling a .45 caliber pistol in a "casual manner."

On March 21, 1984, Wulff came to Klumb's place of employment and paid Klumb $250 towards the debt, and again wanted to speak to Klumb regarding the belongings in the cabin. Klumb said he was too busy to speak to Wulff, so Wulff told him to come to his house and "get this thing talked out."

The next day Klumb was at a friend's house at approximately 9:30 p.m., when he "[s]uddenly had a thought about going to

Jim Wulff's [home]" and "felt that [he would] like to take a gun ..." Klumb surreptitiously took his friend's nine millimeter pistol and concealed it under his jacket. Klumb maintained throughout the trial that he took the gun only because he thought Wulff was potentially dangerous.

Upon arrival at Wulff's home, according to Klumb, Wulff had the .45 caliber pistol shoved in his pants. Klumb stated that Wulff threatened him and his wife and pulled out the .45, at which time a struggle ensued. Klumb testified he pulled out his nine millimeter pistol and pulled the trigger, not aiming at anything. The bullet passed through Wulff's skull and he immediately slumped to the floor. Klumb testified that without thinking he shot Wulff again to stop his "nervous twitching."[1]

The state's theory at trial was that Klumb deliberately executed Wulff, firing two shots into Wulff's forehead. Klumb's theory was self-defense, arguing that the first shot entered the rear of Wulff's skull.

### I. SELF–DEFENSE INSTRUCTIONS

Following trial, over Klumb's objections, Judge Jay Hodges instructed the jury as follows:

The law of self-defense is designed to afford protection to one who is beset by an aggressor and confronted by a necessity not of his own making.

*When a defendant has a prior grievance with a deceased and takes a deadly weapon to an encounter with the deceased, the defendant should be deem [sic] to have provoked the violence* which resulted in the death of the deceased. This is because the defendant in such a situation knows or reasonably should know that the encounter will result in mortal combat. [Emphasis added.]

The underscored portion of these instructions was Instruction 17, and is taken verbatim from *McMahan v. State*, 617 P.2d

---

**1.** Both pathologists who testified at trial stated that it was likely that the first bullet entering

Wulff's skull killed him instantly.

494, 502 (Alaska 1980), *cert. denied*, 454 U.S. 839, 102 S.Ct. 146, 70 L.Ed.2d 121 (1981). In context, the passage discusses the supreme court's previous decision in *Bangs v. State*, 608 P.2d 1 (Alaska 1980). We find the present case factually distinguishable from both *McMahan* and *Bangs*, and hold that the trial court's use of the underscored portion of the quoted instructions constitutes reversible error.

In *McMahan*, the defendant had been warned by the victim not to come back to his apartment because he had a rifle and would use it on the defendant if he returned. McMahan left, armed himself and returned, shooting the victim as the victim approached him with a knife. *McMahan*, 617 P.2d at 501.

Similarly, in *Bangs*, the victim had beaten Bangs. Bangs left, obtained a .38 caliber pistol from his home and returned to the victim's home. He encountered the victim and urged him to "come on." Bangs shot the victim as the victim lunged forward. *Bangs*, 608 P.2d at 2–3.

*Bangs* and *McMahan* both involved the supreme court's refusal to reach alleged deficiencies in the trial court's handling of self-defense. Both cases were affirmed because the supreme court held, as a matter of law, that the defendants were not entitled to self-defense instructions. *See McMahan*, 617 P.2d at 501–02, and *Bangs*, 608 P.2d at 5.

We recently explained *Bangs* in *Brown v. State*, 698 P.2d 671 (Alaska App.1985). In *Brown*, erroneous self-defense instructions were given, but the state argued, as in *Bangs* and *McMahan*, that Brown was not entitled to a self-defense instruction as a matter of law, so the error was harmless. *Brown*, 698 P.2d at 673.

We distinguished *Bangs* from *Brown*, noting that in *Bangs* there was undisputed evidence that Bangs, anticipating resistance, procured a gun for the sole purpose of armed confrontation with the ultimate victim. *Bangs*, 608 P.2d at 5. Bangs challenged the victim to physical combat with the apparent purpose of provoking a response. *Id.* In *Brown*, while there was

"pre-existing disagreement" between Brown and the victim, Brown testified that he did not confront the victim nor seek to provoke him into combat. Brown testified that he sought out the victim only to talk with him. *Brown*, 698 P.2d at 674. We stated:

> Thus, in determining whether Brown was a first aggressor, the crucial inquiry is not whether he was armed when he went to meet with Miller; rather, it is whether his assault occurred "in the course of a dispute provoked by the defendant at a time when he [knew] or ought reasonably to [have known] that the encounter [would] result in mortal combat." This is an inquiry that must be resolved in light of the totality of the evidence presented at trial. [Citation omitted.]

*Id.*

■ We held that Brown was entitled to a self-defense instruction under those facts. It follows that under facts similar to the *Brown* case, the defendant cannot be "deemed to have provoked the violence" simply because there was a pre-existing grievance between the two and the defendant took a deadly weapon to the encounter. Were this the case, Brown would have been deemed to have provoked the violence towards his victim and would not have been entitled to a self-defense instruction.

■ The facts in the present case, like those in *Brown*, distinguish this situation from *Bangs* and *McMahan*. Klumb testified he did not provoke Wulff, nor did he seek out Wulff to challenge him into combat. Throughout the trial, Klumb maintained he went to Wulff's residence only to talk. In addition, contrary even to *Brown*, Klumb did not seek out Wulff solely on his own accord; Wulff wanted Klumb to come "get this thing talked out."

We conclude that the language of Instruction 17 taken verbatim from *McMahan* was inappropriate since this case, in light of the totality of evidence presented at trial, is factually distinguishable from

*McMahan* and *Bangs*. *Brown*, 698 P.2d at 674.[2]

## II. EVIDENCE PRESERVATION

Klumb also argues that his due process rights were violated because the state violated its duty to preserve evidence. Klumb argues that the state prejudiced his case by failing to preserve bone and tissue samples from the area of Wulff's wounds. Klumb requested the bone and tissue samples prior to trial. Purportedly, a pathologist called by Klumb, Dr. Brady, could use such samples to determine conclusively which way the bullets were travelling as they passed through Wulff's skull. Since Klumb testified that the first shot entered the rear of Wulff's skull, and the state's theory was that both shots passed through Wulff's forehead, Klumb argues that the samples were important to his defense. We disagree.

■ Pursuant to Criminal Rule 16, the state has an affirmative duty to collect and preserve *material* evidence. Alaska R.Crim.P. 16; *see, Putnam v. State*, 629 P.2d 35, 43–44 (Alaska 1980). Violations of Criminal Rule 16 result in reversal on appeal only where the defendant is denied due process as a result of the violation. *Williams v. State*, 629 P.2d 54, 63–64 (Alaska 1981). The due process rights of the accused are violated only if the evidence, if collected and/or preserved, could possibly have affected the outcome. *Id.*

■ We note that there were photographs of the wounds to Wulff's head which Dr. Brady testified were of superb quality and depicted "all four of these wounds very, very accurately." Thus, the state did preserve evidence of the nature of the wounds. Dr. Brady was able to conclude, based on the reports of Dr. Rogers, the pathologist who performed the autopsy, and from the photographs, that one bullet entered the rear of Wulff's head and exited through the forehead.[3] Thus, the tissue samples would merely have been cumulative. Furthermore, even if Klumb were able to establish with greater certainty that one entry wound was in the rear of Wulff's skull, this evidence does not appear particularly critical in establishing Klumb's self-defense claim. Klumb could have acted in self defense even if both bullets entered the front of Wulff's skull. Similarly, if one of Wulff's wounds originated from the back of his skull, this is not necessarily inconsistent with a theory that Klumb executed Wulff.

We find no error in Judge Hodge's rulings on Klumb's motions for protective orders and motion to vacate judgment based upon the state's failure to preserve evidence.

REVERSED.[4]

SINGLETON, Judge, concurring and dissenting.

I agree with the court's resolution of all the issues except its treatment of the issue of self-defense. The court holds that the trial court committed prejudicial error in instructing the jury in the language of *McMahan v. State*, 617 P.2d 494, 502 (Alaska 1980), *cert. denied*, 454 U.S. 839, 102

---

2. Under *Bangs* and AS 11.81.335(b) a person who is the "initial aggressor" is not entitled to use deadly force in defense of self. Instruction 17, the basis of our reversal in this case, is largely an attempt to elaborate on the meaning of "initial aggressor." We note that the Alaska Pattern Instruction on the use of deadly force does not define or elaborate on the term "initial aggressor." *See* Alaska Pattern Jury Instructions (Criminal) 81.330 (1980). *See also* Illinois Pattern Instructions, Criminal 2d § 24–25.11 (1981).

3. Near the end of Klumb's redirect examination of Dr. Brady the following exchange took place:

Q. Based on everything you've heard—everything you've seen, including your testimony here and whatever else, have you had any occasion to change your opinion, sir, as to which is an entrance and which was the exit wounds that was [sic] suffered by the deceased, Mr. Wulff?
A. No, sir. He was shot once in the back, once in the front.

4. We find it unnecessary to address Klumb's final assignment of error.

S.Ct. 146, 70 L.Ed.2d 121 (1981). While I agree that this court's decision in *Brown v. State*, 698 P.2d 671 (Alaska App.1985) is irreconcilable with *McMahan* and with the supreme court's earlier opinion in *Bangs v. State*, 608 P.2d 1 (Alaska 1980), I would deem this irreconcilability fatal to *Brown* rather than to the earlier Alaska Supreme Court decisions. This follows the general rule that decisions of higher courts take precedence over the decisions of lower courts. The court's action today is one more instance of an unfortunate trend to ignore inconvenient precedents of the Alaska Supreme Court. *See, e.g., Johnson v. Fairbanks*, 703 P.2d 442, 444 (Alaska App. 1985) (Singleton, J., dissenting), *petition for hearing granted* (Alaska, September 19, 1985), and *Harris v. State*, 678 P.2d 397, 411 (Alaska App.1984) (Singleton, J., concurring and dissenting) *rev'd, Stephan v. State*, 711 P.2d 1156 (Alaska, 1985).

Perhaps a further word is necessary to clearly articulate what I consider to be the difference between *McMahan* and *Bangs* on the one hand, and *Brown* and this case on the other. Long before the supreme court decided *Bangs* and *McMahan*, the rule was well established that an "initial aggressor" could not claim self-defense. Thus, the person who throws the first punch, shouts the first insult, or fires the first shot forfeits any right to claim self-defense in responding to the violence he provokes. Neither *McMahan* nor *Bangs* was necessary to elucidate that rule. In *McMahan* and *Bangs* the supreme court went beyond traditional law governing "initial aggressors," and extended the forfeiture rule to include those who have a prior grievance with the deceased and seek him out while armed with a deadly weapon. In those circumstances, the defendant may not be an initial aggressor as a matter of fact (in the cited cases he uniformly testified he was not), but he is deemed to be an initial aggressor as a matter of law for purposes of forfeiting the right to self-defense. It is clear that the supreme court reached this conclusion on policy grounds: that one who arms himself under similar circumstances "knows or reasonably should know that the encounter may result in mortal combat" with the attendant risk to innocent bystanders as well as the immediate participants in the affray. *Bangs*, 608 P.2d at 5, quoting *State v. Millett*, 273 A.2d 504, 510 (Me.1971). *See also Brown*, 698 P.2d at 677 (Singleton, J., concurring and dissenting). It must be stressed that in *Bangs* and *McMahan*, and in *Millett*, a case relied on by the supreme court in *McMahan* and *Bangs*, there was some evidence from which a jury could find that the defendant did not "provoke the affray" beyond arming himself and seeking out one who he knew was dangerous.

In *Brown* and the instant case, our court has simply rejected the supreme court's alternate legal basis for holding one to be an "initial aggressor," thereby forfeiting the right to self-defense. Under this court's view, only the person who fires the first shot, strikes the first blow, or speaks the first insult can be deemed an initial aggressor, regardless of the risks he foresees when he arms himself and seeks out the deceased. Such a view is at odds with Alaska Supreme Court precedent. I therefore dissent from this court's decision to reverse Klumb's conviction.