745 P.2d 601

**STATE of Arizona, Appellant,**

v.

**Faustino V. RAMOS, Appellee.**

**1 CA–CR 10321.**

Court of Appeals of Arizona,
Division 1, Department B.

April 21, 1987.

Reconsideration Denied July 31, 1987.

Review Denied Nov. 17, 1987.

Thomas E. Collins, Maricopa Co. Atty. by H. Allen Gerhardt, Deputy Co. Atty., Phoenix, for appellee.

A. Elwyn Larson, Phoenix, for appellant.

OPINION

GREER, Judge.

The appellee (Ramos) was arrested on July 7, 1985, for driving under the influence of intoxicating liquor (DWI). Ramos refused a breath test after the state invoked the implied consent law. The police did not tell him that he had a right to an independent chemical test for blood alcohol level, and at no time did he request an independent test. Ramos was jailed immediately following the booking process.

On January 13, 1986, by information, Ramos was charged with driving when under the influence while license suspended, cancelled, revoked or refused, a class 5 felony. Appellee filed a motion in limine, which

was treated by the trial court as a motion to dismiss. An evidentiary hearing was held on the motion on June 4, 1986. The trial court dismissed without prejudice the DWI portion of the charge, citing *Montano v. Superior Court*, 149 Ariz. 385, 719 P.2d 271 (1986). The remaining charge (of driving while license suspended, cancelled, revoked or refused) was also dismissed without prejudice.

The state has appealed the dismissal of the DWI charge, arguing that *Montano* is inapplicable because Ramos was given an opportunity for a breath test. In *Montano* the supreme court held that when a suspect is not given the opportunity for a breath test, the suspect must be advised of his right to an independent test. *Id.* at 391, 719 P.2d at 277. The state also argues that in a supplemental opinion the court held that *Montano* is to be given prospective application only, and thus the trial court erred in relying on *Montano* as justification for dismissal. Ramos argues that *Montano* applies to the facts of this case, and that to come to a contrary decision would be a violation of the Fourteenth Amendment of the United States Constitution.

■ *Montano* was decided on April 18, 1986, subsequent to appellee's arrest on June 7, 1985, and does not apply to his arrest. *See id.* at 393, 719 P.2d at 279. The trial court therefore improperly applied the *Montano* mandate to the facts of this case. Normally, this would end the matter. However, other proceedings presented in this court persuade us that there is some conflict in the manner in which the trial courts are interpreting *Montano*. Hence, we reach the merits here to correct any misunderstanding of *Montano*.

In *Montano* the defendant was arrested for driving under the influence of intoxicating liquor. At the time of the arrest South Tucson Police Department policy did not require the testing of DWI suspects' breath, blood, or urine for alcohol, presumably because South Tucson had no functioning intoxilyzer machine. The police department made no arrangements to borrow a machine or to have blood or urine samples analyzed.

As a consequence, upon arrest the suspect in *Montano* was not requested to submit to any test of his breath, blood, or urine, and he did not request that any test be done. The arresting officer did not inform the suspect that he had the right to an independent test. On appeal, Montano claimed that the failure to inform him of his right to an independent test denied him due process in violation of both the United States and Arizona Constitutions. Under these circumstances, our supreme court held that when the state chooses not to invoke the implied consent statute, "DWI suspects must be informed of their right to an independent chemical alcohol test at their own expense ..." *Id.* at 389, 719 P.2d at 275.

A number of factors unique to DWI cases provide the rationale for the holding in *Montano*. For example: 1) The state must provide a fair trial under the due process clause of the Fourteenth Amendment. This "task is made easier when the state procures objective evidence of guilt or innocence ..." *Id.* at 391, 719 P.2d at 277. 2) When the state foregoes this evidence due process requires "that the suspect be apprised of the opportunity. The importance of objective, scientific evidence to a fair adjudication has long been recognized in Arizona." *Id.* 3) DWI cases "are particularly susceptible of resolution by way of chemical analysis of intoxication." *Id.* 4) In DWI investigations "it is crucial for both the state and the defendant to gather evidence relevant to intoxication close in time to when the defendant allegedly committed the crime." *Id.*, citing *McNutt v. Superior Court*, 133 Ariz. 7, 10 n. 2, 648 P.2d 122, 125 n. 2 (1982). Given the above set of factors,

When the implied consent statute is *not* invoked, it is important that DWI suspects be promptly informed upon arrest of their right to secure an independent alcohol test; and the police must make every reasonable effort to facilitate a suspect's request (citation omitted). The state has no obligation, apart from *Baca*, to actually gather evidence for a suspect,

*but in the absence of the implied consent law* it must provide suspects a fair chance to gather evidence by informing them of their right to testing.

*Id.* (emphasis added). The obligation in *Baca* was that the police must offer to collect and preserve a breath sample for the suspect whenever they choose to give a breath test. *Baca v. Smith,* 124 Ariz. 353, 604 P.2d 617 (1979).

■ *Montano* holds only that the obligation by law enforcement to inform a suspect of his right to an independent test does not arise unless the state chooses *not* to invoke the implied consent law. These facts are not present in this case. The arresting officer asked Ramos to take a breath test, and he refused. Thus, the state invoked the implied consent law, and Ramos was afforded the opportunity to obtain scientific evidence, but waived that opportunity. *See Baca.* Neither the holding or rationale in *Montano* dictate that Ramos must be told of his right to an independent test in this situation. Absent the unique conditions in *Montano* no Arizona court has ever held that a DWI suspect must be told of his right to an independent test.

■ Ramos contends that the officer violated his due process rights by failing to advise him of his right to an independent blood test. Arizona Revised Statutes § 28–692(I) authorizes a suspect to obtain an independent blood test. The statute states that, "the person tested may have a physician or qualified technician, chemist, registered nurse or other qualified person of his choosing administer a test or tests in addition to any administered at the direction of a law enforcement officer." Ramos was not advised of his right to obtain an independent test. The statute, however, contains no requirement that such advice be given.

Alaska has a statutory provision that is nearly identical to A.R.S. § 28–692(I). The Alaska Supreme Court has held that neither that statute, nor state or federal constitutional provisions, require police to advise a DWI suspect of his right to obtain an independent test. *Palmer v. State,* 604 P.2d 1106 1110 (Alaska 1979). *See also, City of Farmington v. Joseph,* 91 N.M. 414, 575 P.2d 104 (App.1978); *Conrad v. Schwendiman,* 680 P.2d 736 (Utah 1984). The *Miranda* warnings inform the suspect of fundamental rights guaranteed by the Fifth and Sixth Amendments to the United States Constitution. The right to be informed of the right to an independent blood test does not rise to that level. States that have held that a DWI suspect has this right have done so based on statutory language. For example, in *Connolly v. State,* 79 Wash.2d 500, 487 P.2d 1050 (1971), the Washington Supreme Court held that a suspect must be advised of his right to have a physician, etc., of his own choosing administer an additional test or tests as provided in the statute. The applicable Washington statute, though, mandates that an officer shall inform the person of his right to refuse the test, and of his right to have additional tests administered by any qualified person of his choosing. *Id.* at 487 P.2d 1051.

This court has specifically rejected the approach taken in *Connolly.* In so doing, this court stated:

> We are not unmindful of other jurisdictions which have held that under their implied consent status [sic], a driver must be advised of the right to independent testing. [Citations omitted]. However, their implied consent statutes, as the State of Washington, have language in the statutes mandating that the advice be given.

*White v. State,* 144 Ariz. 39, 41 n. 1, 695 P.2d 288, 290, n. 1 (App.1985).

Hence, absent a statute mandating that the officer inform the suspect of his right to an independent test or the circumstances in *Montano,* the state has no affirmative duty to inform a DWI suspect of his right to an independent test. *See City of Farmington v. Joseph; Conrad v. Schwendiman.*

When the legislature intends that a suspect be advised, it so states. Thus, advice is required in A.R.S. § 28–691(B). This statute states that, "following an arrest a violator shall be requested to submit to any

test prescribed by subsection (A) of this section, and if the violator refuses he shall be informed that his license or permit to drive will be suspended or denied if he refuses to take the test." Arizona Revised Statutes § 28–692(I) on the other hand does not use the mandatory (shall), but only states that a person tested may have a physician or other qualified person of his own choosing administer a test or tests in addition to any administered by the officer.

Failure of the officer to inform the DWI suspect of his right to an independent test does not constitute interference with the ability to get an independent test. Ramos was free to arrange for an independent test.

The facts here are distinguishable from *Amos v. Bowen,* 143 Ariz. 324, 693 P.2d 979 (App.1984) and *McNutt v. Superior Court.* In *McNutt* the suspect informed the police of his desire to obtain an independent blood test after the police gave him a chemical test, but no action was taken on his request. 133 Ariz. at 9, 648 P.2d at 124. In *Amos* the suspect waived his right to the preservation of the breath sample, but stated that he wanted an independent blood test and signed the intoxilyzer test checklist to that effect. 143 Ariz. at 327, 693 P.2d at 982. Through a set of fortuitous circumstances there was a two hour delay before the officer was able to proceed with Amos to the hospital for the test. The court held that the delay by the state interfered with the suspect's right to exculpatory evidence which could refute a charge against him. *Id.* at 328, 693 P.2d at 983.

■ What is critical in determining whether the state unreasonably interfered with the suspect's right to obtain an independent test is whether he was afforded a fair chance to obtain independent evidence of sobriety essential to his defense at the only time when it was available. *Smith v. Ganske,* 114 Ariz. 515, 517, 562 P.2d 395, 397 (App.1977). In the instant case we have no evidence that the state impermissibly interfered with the appellant's right to an independent test. Therefore, there was no violation of the appellant's right to due

process. *See Amos,* 143 Ariz. at 328, 693 P.2d at 983.

In conclusion, we find that *Montano* is not applicable to the facts of this case. In the instant case, the state invoked provisions of the implied consent law, but Ramos refused the test. He has no constitutional right to be told of his right to an independent test. No statute requires the state to tell him of this right. The record is devoid of any facts which would tend to indicate that the state interfered with Ramos' right or ability to obtain an independent test. He simply failed to obtain another independent test.

For the foregoing reasons the order dismissing the DWI is reversed, and this matter is remanded for further proceedings consistent with this opinion.

JACOBSON, P.J., and HAIRE, J., concur.