ARCO ALASKA, INC.; BP Exploration (Alaska) Inc.; Exxon Corporation; Marathon Oil Company; Phillips Petroleum Company; Union Oil Company of California; and Mobil Oil Corporation, Appellants,

v.

STATE of Alaska, Commissioner of Revenue Hugh Malone; and Commissioner of Administration John M. Andrews, Appellees.

No. S–4155.

Supreme Court of Alaska.

Jan. 24, 1992.

William B. Rozell, Leon T. Vance, and Susan R. Pollard, Faulkner, Banfield, Doogan & Holmes, Juneau, for appellants.

Jeffrey W. Bush, Asst. Atty. Gen., and Charles E. Cole, Atty. Gen., Juneau, for appellees.

Before RABINOWITZ, C.J. and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

MOORE, Justice.

In this case, we consider whether article II, section 18 of the Alaska Constitution mandates a two-thirds vote of both houses of the legislature for the passage of a tax statute containing a retroactive provision.[1] We hold that it does not.

The facts in this case are uncontested. Appellants,[2] as producers of oil in Alaska, are subject to oil production taxes under AS 43.55.011–.013. An oil producer's tax liability is calculated by multiplying an amount defined in AS 43.55.011 by the economic limit factor (ELF) as determined by a complex formula set out in AS 43.55.013.[3]

In 1989, a bill modifying the ELF formula was introduced in the state legislature.[4] On March 22, 1989, the House of Representatives passed the bill by a simple majority vote. A separate roll was taken on a clause of the bill providing for an immediate effective date but, because it failed to garner the two-thirds vote necessary for passage, the effective date clause was not adopted.[5] On May 8, 1989, the Senate passed the bill by a simple majority vote.[6] The Governor signed the bill into law on the same day.[7] Section 4 of the act provided that "[t]his Act is retroactive to January 1, 1989, and applies to oil produced after December 31, 1988." Ch. 25, § 4, SLA 1989. Because the House vote on the immediate-effective-date provision failed, the effective date of the statute was listed as August 6, 1989, or ninety days after the Governor signed the bill. Ch. 25, SLA 1989.

On July 28, 1989, the companies sued the State of Alaska, the Commissioner of Revenue, and the Commissioner of Administration (State), challenging the retroactive application of the ELF amendments as a violation of article II, section 18 of the Alaska Constitution.[8] While the action was pending, the parties stipulated that the companies would pay, under protest, the oil production taxes under the new statute for the period between January 1, 1989 and August 6, 1989. In return, the State agreed to provide a credit against future tax payments should the companies ultimately prevail in their suit. As a result of the retroactive application of the ELF amendments, the companies paid approximately $100,-000,000 in additional oil production taxes.

On April 5, 1990, the State filed a motion for judgment on the pleadings or, in the alternative, for summary judgment. Five days later, the companies moved for partial summary judgment. The superior court granted the State's motion for summary judgment and denied the companies' motion. This appeal followed.

The companies argue that the retroactive date included in the ELF amendments constitutes "another effective date" under article II, section 18, thereby triggering the two-thirds vote requirement. They contend that because no provision of the act received more than a simple majority vote of either legislative house, the retroactive application of the ELF amendments violates article II, section 18.

1. Alaska Const. art. II, § 18 provides:

   Laws passed by the legislature become effective ninety days after enactment. The legislature may, by concurrence of two-thirds of the membership of each house, provide for another effective date.

2. Appellants include ARCO Alaska, Inc., BP Exploration (Alaska) Inc., Exxon Corporation, Marathon Oil Company, Phillips Petroleum Company, Union Oil Company of California, and Mobil Oil Corporation (hereinafter collectively "companies").

3. The application of the ELF reduces the oil production tax an oil company pays as the productivity of an oil well declines. The purpose of the ELF is to encourage the development of

marginally productive wells. However, the ELF in effect prior to 1989 provided tax breaks to some highly productive wells.

4. H.B. 118, 16th Leg., 1st Sess. (1989). See 1989 House Journal 171.

5. 1989 House Journal 706–09, 726–29.

6. 1989 Senate Journal 1825–26.

7. 1989 House Journal 1888.

8. The companies also brought a due process challenge to the retroactive application of the act. However, the companies later waived the due process challenge in order to expedite the appeal of the article II, section 18 issue.

As a constitutional question, the issue before the court is a question of law to which we apply our independent judgment. *Sonneman v. Knight*, 790 P.2d 702, 704 (Alaska 1990). Constitutional provisions should be given a reasonable and practical interpretation in accordance with common sense. *Kochutin v. State*, 739 P.2d 170, 171 (Alaska 1987). The court should look at the plain meaning and purpose of the provision and the intent of the framers. *Id.*

We have observed that one of the purposes of article II, section 18 is to provide a fair opportunity to those people affected by legislation to learn of the new laws by which they must live. *State v. A.L.I.V.E. Voluntary*, 606 P.2d 769, 772 (Alaska 1980); *Anchorage Mun. Employees Ass'n v. Municipality of Anchorage*, 618 P.2d 575, 580 (Alaska 1980). We believe the framers envisaged that article II, section 18 would afford those affected an opportunity to react to the new legislation by challenging it either through the referendum process or through the courts, as occurred in this case.

A careful review of the record of the constitutional convention reveals the relationship between article II, section 18 and the referendum powers as provided in article XI, sections 1–7 of the Alaska Constitu-

tion.[9] As originally proposed by the framers, the effective date provision closely paralleled the referendum provisions.[10] After the framers debated and amended article II, section 18 to accommodate various concerns of the delegates,[11] the final version no longer coincided perfectly with the referendum provisions. However, there is no indication in these deliberations that the framers intended the amendments to article II, section 18 to expand its scope to encompass retroactive laws.

The companies concede that the delegates to the constitutional convention did not discuss retroactive laws during their deliberations on article II, section 18. Nonetheless, they argue that the delegates understood and intended the provision to encompass retroactive laws. The thrust of this argument is that this provision was intended by the delegates to provide a substantive constitutional safeguard against retroactive laws. We disagree.

Our review of the proceedings of the constitutional convention leads us to conclude that the framers, in enacting article II, section 18, did not intend to provide substantive protection of individual rights against retroactive legislation.[12] Had that been the intent of the framers, we believe

---

9. We have previously noted the relationship between the effective date provision contained in article II, section 18 and the referendum provisions contained in article XI. *See Walters v. Cease*, 388 P.2d 263, 267 (Alaska 1964).

10. In the original proposal for article II, section 18, laws were to take effect ninety days after adjournment of the legislative session, except for emergency acts, "which emergency must be expressed in the act." Constitutional Convention Committee Proposal No. 5, Report of the Committee on Legislative Branch (December 14, 1955) at 6–7. The original proposal for the referendum provisions contained the same ninety-day time period and the same exception for emergency acts. Constitutional Convention Committee Proposal No. 3, Report of the Committee on Direct Legislation, Amendment and Revision (December 9, 1955) at 2–3.

11. The concerns voiced by the delegates in amending the proposed effective-date provision were: (1) that, in order to establish an immediate effective date, the legislature should not be

forced to declare fictitious "emergencies," as was the practice under the Territorial Organic Act; (2) that the effective date should be tied to the date of enactment rather than the date of adjournment of the legislative session; (3) that the legislature should have the flexibility to declare effective dates both earlier and later than the expiration of the ninety-day period; and (4) that the two-thirds vote requirement contained in the Territorial Organic Act should be retained. No concern was expressed regarding the effects of retroactive legislation. *See* 3 Proceedings of the Alaska Constitutional Convention (PACC) 1759–60 (January 1956); 4 PACC 3104–22 (January 1956).

12. Protection against various legislative excesses is provided by other constitutional provisions. The specific constitutional provisions limiting the power of the state to enact laws which infringe on individual rights are contained in article I, section 15 of the Alaska Constitution. These include the prohibition of the passage of bills of attainder, ex post facto laws, and laws impairing contractual obligations.

they would have done so explicitly.[13] Rather, in retaining the two-thirds vote requirement, the framers merely sought to assure that broad legislative support existed before the legislature deviated from the ninety-day post-enactment effective date.

Our decision finds further support in the plain meaning of the language of article II, section 18. *Webster's New International Dictionary* (2d ed. 1948)[14] defined "effective" as:

1.  Concerned in, or having the function of, producing an effect.

    . . . .

6.  Law. In actual operation; —said of a statute or judicial order limited by its terms to begin at a designated time.

*Id.* at 819. In light of these definitions, the "effective date" of a law, as that term is used in article II, section 18, is the date on which the law goes into actual operation or produces a legal effect.

The companies' interpretation of article II, section 18 ignores, rather than accords with, common sense and the plain meaning of the language of the provision. According to their theory, the effective date of the ELF amendments was January 1, 1989. If correct, this would mean the statute was in actual operation over four months before the Governor signed the act. It defies common sense to say that a law can produce a legal effect or can be in actual operation prior to its enactment.

A law's retroactive date and its effective date are distinctly different concepts. "A retroactive [retrospective] law is one which gives to pre-enactment conduct a different legal effect from that which it would have had without passage of the statute." *Norton v. Alcoholic Beverage Control Bd.*, 695 P.2d 1090, 1093 (Alaska 1985) (quoting Hochman, *The Supreme Court and the Constitutionality of Retroactive Legislation*, 73 Harv.L.Rev. 692, 692 (1960)). Thus the retroactive date of the law serves to identify that conduct to which the law will apply. A retroactive law applies only to conduct which occurred on or after the retroactive date. While a retroactive law applies to pre-enactment conduct, the legal effect produced by the law occurs only after the law's effective date.[15]

The companies argue that our decision in *Atlantic Richfield Co. v. State*, 705 P.2d 418 (Alaska 1985) (hereinafter *ARCO* ), confirms their position. Specifically, they rely on the following passage:

[B]ecause two-thirds of the legislature voted to make the [tax statute in question] immediately effective, a separate two-thirds vote for the act to be retroactive was not constitutionally required.

*ARCO* at 438. The companies incorrectly interpret this dicta from *ARCO* to mean that a separate two-thirds vote is required to pass a retroactive provision when a two-thirds vote is not obtained for the immediate-effective-date provision. In this passage, however, we were merely pointing out that the procedure used by the legislature in that case was not constitutionally defective.

Elsewhere in our opinion in *ARCO* we pointed out that, with respect to retroactive statutes, "[a] two-thirds vote requirement does not appear in [AS 01.10.090], *nor elsewhere in Alaska law*."[16] *Id.* at 438 (emphasis added). This includes the Alaska Constitution.[17]

---

13.  Seven state constitutions contain provisions expressly prohibiting retroactive laws. *See* Ga. Const. art. I, § 1, ¶ VII; Mo. Const. art. I, § 3; N.H. Const. Pt. 1, Art. 23; N.C. Const. art. I, § 16; Ohio Const. art. II, § 28; Tenn. Const. art. I, § 20; and Tex. Const. art I, § 16.

14.  This dictionary was recommended as a reference to the delegates to the Alaska Constitutional Convention. *See Drafting Suggestions of the Committee on Procedure and Drafting* (November 22, 1955) at 4.

15.  In the present case, the ELF amendments altered the tax consequences of oil production

which occurred on or after the retroactive date of January 1, 1989. However, the new taxes were not due until September 20, 1989. Ch. 25, § 6, SLA 1989. Failure to meet this deadline resulted in an interest penalty. *Id.*

16.  AS 01.10.090 states that "[n]o statute is retrospective unless expressly declared therein."

17.  The version of the legislative drafting manual in use during the 1989 legislative session states that "[t]he retroactive section and the sections in the bill that are to be retroactive *should* have immediate effective dates." Legislative Affairs

Courts of other jurisdictions which have faced this issue have similarly held that provisions in their state constitutions requiring a two-thirds vote of the legislature to deviate from the constitutionally-prescribed effective date do not apply to tax laws having retroactive dates. *See Mecham v. State Tax Commission,* 17 Utah 2d 321, 410 P.2d 1008, 1009 (1966); *Homestake Mining Co. v. Johnson,* 374 N.W.2d 357, 363–64 (S.D.1985).

For the foregoing reasons, we conclude that article II, section 18 does not require a two-thirds vote of both houses of the legislature for the passage of laws containing retroactive provisions. The superior court properly granted summary judgment for the state.

AFFIRMED.

Agency, *Manual of Legislative Drafting* 28 (1989) (emphasis added). Though this language indicates that the practice may be highly desirable, it does not elevate it to a constitutional requirement.