Dennis SNYDER, Petitioner,

v.

STATE of Alaska, Respondent.

No. S–6661.

Supreme Court of Alaska.

Dec. 27, 1996.

Robert John, Law Office of Robert John, Fairbanks, for Petitioner.

John A. Scukanec, Assistant Attorney General, Office of Special Prosecutions and Ap-

peals, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Respondent.

Before COMPTON, C.J., RABINOWITZ, MATTHEWS, and EASTAUGH, JJ., and CARPENETI, J. pro tem.*

### OPINION

COMPTON, Chief Justice.

### I. INTRODUCTION

Dennis Snyder was arrested for driving while intoxicated (DWI). The police attempted to test Snyder's breath, but he did not blow hard enough into the Intoximeter machine to register a result. Both before and after the aborted breath test, Snyder requested a blood test of his alcohol level. The police refused his requests.

Snyder was convicted of DWI and Refusal to Submit to a Breath Test (Refusal). He appealed; the court of appeals affirmed his convictions. *Snyder v. State*, 879 P.2d 1025 (Alaska App.1994). We granted Snyder's Petition for Hearing on the following issues: (1) Whether the state violated Snyder's statutory right to an independent chemical test; (2) Whether the state violated Snyder's constitutional right to an independent chemical test; and (3) Whether the trial court erred in refusing to instruct the jury on the defense of subsequent consent. We reverse.

### II. FACTS AND PROCEEDINGS

On the night of March 20, 1993, Alaska State Trooper Sgt. Charles Lovejoy found Snyder in his car, which had slid into a snow berm at an intersection. According to Lovejoy, Snyder did not appear to have been injured in the mishap and did not complain of pain. Lovejoy suspected that Snyder had been drinking and therefore administered a number of field sobriety tests. He then placed Snyder under arrest for DWI.

Alaska State Trooper Dixie Spencer drove Snyder from the scene of the arrest to the police station. While driving to the station, Snyder requested that Spencer take him to a nearby hospital for a blood test of his alcohol level. Spencer refused this request, believing that an arrestee was required to submit to a breath test before a blood test could be administered.

At the station, Spencer asked Snyder to take a breath test by blowing into the Intoximeter machine. Snyder made four purported attempts to blow into the machine. However, despite Spencer having twice read the implied consent warnings to Snyder, and despite Spencer's repeated instructions to Snyder about how to blow into the machine's tube and how long to sustain his breath, Snyder never provided an adequate breath sample.

After Snyder had thrice blown unsuccessfully into the tube, Spencer advised him that he could try "one more time." When Snyder again failed to provide an adequate breath sample, Spencer told him, "All right, Dennis, we'll just charge you with refusal." Snyder objected: "I blowed in the tube. It's your fault.... The machine don't work.... I blowed in, I did everything you asked." He then offered to take the test again: "I'll blow again, ... It's not over, one more time." Spencer had already pressed the print button on the Intoximeter; a further test would have required a five-minute wait. Spencer terminated the session and charged Snyder with DWI and Refusal. A short time later Snyder again requested a blood test; the police again denied his request.

Before trial Snyder moved to suppress evidence of his intoxication and refusal to submit to a breath test, and to dismiss the charges against him, on the ground that the police improperly had denied his requests for a blood test. The trial court denied Snyder's motion. At trial Snyder requested an instruction regarding subsequent consent as a defense to the Refusal charge. The court refused to give the instruction, because it concluded that the defense was available only in the case of an "unequivocal," or explicit, refusal to submit to a test. A jury convicted Snyder of DWI and Refusal. The court of appeals affirmed his convictions.

---

* Sitting by assignment made pursuant to article IV, section 16 of the Alaska Constitution.

## III. DISCUSSION

### A. The Constitutional Right to an Independent Test [1]

 Snyder moved to dismiss on the ground, *inter alia*, that the state's failure to honor his request for an independent blood test violated his right to due process of law guaranteed him by the Alaska Constitution.[2] In affirming the trial court's denial of the motion, the court of appeals recognized that in *Gundersen v. Municipality of Anchorage*, 792 P.2d 673 (Alaska 1990), this court established an accused's right to an independent test:

> Since a defendant must provide the state with potentially incriminating evidence at the risk of criminal penalties, we hold that due process requires that the defendant be given an opportunity to challenge the reliability of that test in the simplest and most effective way possible, that is, an independent test.

*Gundersen*, 792 P.2d at 676, *quoted in Snyder*, 879 P.2d at 1028. However, the court of appeals held that "[b]y definition" the right to a blood test "attaches only after an arrestee submits to a breath test." *Snyder*, 879 P.2d at 1028. We disagree.

We conclude that the Due Process Clause of the Alaska Constitution entitles a DWI arrestee to an independent chemical test even if that person refuses to take the statutorily prescribed breath test.[3]

In *Lauderdale v. State*, 548 P.2d 376 (Alaska 1976), we held that due process required the police to gather and preserve breath samples in order that an accused may challenge the results of a police-administered breath test. *See also Champion v. Dep't of Public Safety*, 721 P.2d 131 (Alaska 1986); *Briggs v. State, Dep't of Public Safety*, 732 P.2d 1078 (Alaska 1987); *Municipality of Anchorage v. Serrano*, 649 P.2d 256 (Alaska App.1982). In *Gundersen*, we held that the police could satisfy due process by informing the arrestee of his right to obtain an independent test and assisting him in obtaining that test. *Gundersen*, 792 P.2d at 675–76. Our primary concern in *Lauderdale* and *Gundersen* may appear to have been with the accused's opportunity to challenge the reliability of the breath test. Implicit in these decisions, however, is our recognition of the unique considerations presented by the quickly dissipating nature of blood alcohol evidence and their implications for the due process protections afforded the DWI arrestee. In *Gundersen* we stressed that to effectively comply with the independent test requirement " 'the prosecution would, at a minimum, have to show ... that persons qualified to conduct independent tests or to preserve blood or breath samples for the purpose of conducting independent tests were in fact available in the area where the breathalyzer test was administered.' " *Id.* at 676–77 (quoting *Serrano*, 649 P.2d at 258 n. 5). And, of course, it is unlikely that we would have required preservation of the breath samples in *Lauderdale* and its progeny if the accused later could have obtained a blood alcohol test not rendered meaningless by metabolism.

 It is a fundamental tenet of due process of law that a person accused of a crime has a right to attempt to obtain exculpatory evidence. And it is well established that law enforcement has a duty to preserve and disclose material evidence, the dereliction of which can deprive the accused of due process. *See Stephan v. State*, 711 P.2d 1156 (Alaska 1985); *McMahan v. State*, 617 P.2d 494, 502 n. 19 (Alaska 1980); *Putnam v. State*, 629 P.2d 35, 43–44 (Alaska 1980); *compare Klumb v. State*, 712 P.2d 909, 912 (Alaska App.1986) ("Pursuant to Criminal Rule 16, the state has an affirmative duty to collect and preserve *material* evidence.") *with March v. State*, 859 P.2d 714, 716 (Alaska

---

1. Whether the state violated Snyder's constitutional right to an independent test is a question of constitutional law to which we apply our independent judgment. *Arco Alaska, Inc. v. State*, 824 P.2d 708, 710 (Alaska 1992). Our duty is to adopt the rule of law which is most persuasive in light of precedent, reason and policy. *Guin v. Ha*, 591 P.2d 1281, 1284 n. 6 (Alaska 1979).

2. Article I, section 7 of the Alaska Constitution provides in part: "No person shall be deprived of life, liberty, or property, without due process of law."

3. AS 28.35.032(f) provides that refusal to submit to the chemical breath test is a Class A misdemeanor. Refusal of the chemical breath test is a criminal act irrespective of any request for or submission to a blood alcohol test.

App.1993) ("While officers have a duty to preserve potentially exculpatory evidence actually gathered during a criminal investigation, the due process clause has never required officers to undertake a state-of-the-art investigation of all reported crimes."). Although the state normally may not have an obligation to aid a suspect in gathering potentially exculpatory evidence, in view of the unique evidentiary circumstances attendant to DWI arrests, we believe that in the DWI context the accused's right and the state's duty extend to the opportunity to obtain an independent chemical test, and that this opportunity must be made available to the accused whether or not the accused agrees to submit to a breath test.

 The concept of due process is not static; it evolves as times and circumstances require. *See Stephan*, 711 P.2d at 1161 ("[A]mong other things, [due process] must change to keep pace with new technological developments."). Over the years the public's perception of drunk driving has evolved. What the public once viewed as a common indiscretion it now views as a serious crime and public health hazard. The state's drunk driving statutes now are enforced rigorously, prosecuted zealously, and provide for substantial punishments. *See, e.g.,* AS 28.35.030(n) (providing that third conviction for DWI is a felony punishable by a fine of not less than $5,000 and imprisonment for not less than 120 days). That is proper. It is also proper, however, that we remain vigilant in safeguarding the rights of individuals and ensure that those accused of serious crimes such as DWI have the aid of the process necessary for them fairly to defend against such charges.

 The concept of due process also does not exist in a vacuum. Just as it must evolve with changes in circumstances, it must adapt to fit its environs. In *Stephan* we observed:

Since its announcement, the *Mallott* rule [requiring recording of interrogations] has always included a proviso, "when feasible." The failure to electronically record an entire custodial interrogation will, therefore, be considered a violation of the rule, and

subject to exclusion, *only if the failure is unexcused.*

711 P.2d at 1162. The *Stephan* proviso applies in this context. As long as it is not impracticable for the police to take a defendant to a facility where he or she can obtain an independent test, this potentially exculpatory evidence cannot be denied a defendant. However, if obtaining an independent test is impracticable or exceedingly burdensome, as may be the case, for example, if the accused is arrested in a community without the capability of providing a blood test, no test would be constitutionally required.

 We do not believe our conclusion that due process proscribes pre-conditioning an accused's right to an independent test on completion of the state's test of choice will significantly burden law enforcement. As is true of other constitutional rights, the right to an independent chemical test can be knowingly and intelligently waived. *See Gundersen*, 792 P.2d at 677; *Thessen v. State,* 454 P.2d 341, 343 (Alaska 1969); *see also Schneckloth v. Bustamonte,* 412 U.S. 218, 235–41, 93 S.Ct. 2041, 2051–55, 36 L.Ed.2d 854 (1973) (knowing and intelligent waiver standard applied to those rights guaranteed to a criminal defendant to preserve a fair trial). In those many cases in which the police have apprised the accused of his or her right to an independent test and the accused has waived the right, today's decision will not affect the procedures police employ. Of those cases in which the accused chooses to exercise the right to an independent test, it is safe to assume that the great majority, after considering the significant penalties for Refusal, likely will submit to the breath test. As arrestees already had a statutory right to an independent test if they submitted to a breath test, *see* AS 28.35.033(e), the only burden added by today's decision is the testing of those arrestees who refuse to take a breath test, but demand an independent test. No evidence suggests that number will be significant.

 This is not the first context in which we have held that the Due Process Clause of the Alaska Constitution mandates more than the state's mere abstention from the destruction of evidence. In *Stephan* we

held that state due process required law enforcement agencies to electronically record the custodial interrogation of suspects. *Stephan*, 711 P.2d at 1159–60; *see also S.B. v. State*, 614 P.2d 786, 790 n. 9 (Alaska 1980); *Mallott v. State*, 608 P.2d 737, 743 n. 5 (Alaska 1980). We reached this conclusion because we were convinced "that recording, in such circumstances, is now a reasonably necessary safeguard, essential to the adequate protection of the accused's right to counsel, his right against self incrimination and, ultimately, his right to a fair trial." *Stephan*, 711 P.2d at 1159–60. Likewise, where, as here, the objective evidence is inherently evanescent, is potentially presumptively exculpatory,[4] and can be obtained by the accused by placing only a slight burden on the state,[5] we are convinced that the opportunity to obtain evidence of blood alcohol content is a reasonably necessary safeguard, essential to the adequate protection of the accused's right to a fair trial.[6]

What remains is the question of the remedy to be given Snyder for the state's violation of his due process right. A typical remedy employed in cases where evidence is obtained in violation of a defendant's rights is the exclusion of that evidence. *See, e.g., Stephan*, 711 P.2d at 1163–64 (exclusion of defendant's statements proper remedy for police's failure to record statements). In a variant on this, where the state has denied a defendant the opportunity to challenge a properly administered breath test by failing to preserve a breath sample or to offer an independent test, we have excluded the results of the breath test. *See Briggs*, 732 P.2d at 1080; *Champion*, 721 P.2d at 132–33; *Lauderdale*, 548 P.2d at 381; *Serrano*, 649 P.2d at 258–59.

Here there was no blood alcohol test of any kind, and so none to suppress. Concern for effective compliance with the rule we announce today dictates that we attach some sanction to the state's unconstitutional interference with Snyder's efforts to obtain an independent test. *See Stephan*, 711 P.2d at 1163 (adopting blanket exclusionary rule for unrecorded interrogations because law enforcement failed to comply with recording rule when the sanction was discretionary). Nevertheless, we are not persuaded that outright dismissal of the DWI charge is warranted or consistent with the sound administration of justice, especially in light of the fact that the jury convicted Snyder of DWI on the basis of admissible evidence which Snyder had an opportunity to rebut, albeit not with the potentially most exculpatory evidence. *Cf. Copelin v. State*, 659 P.2d 1206, 1215 (Alaska 1983) ("Determining whether an exclusionary remedy is appropriate requires a balancing of the purpose behind excluding illegally obtained evidence with the interest in admitting reliable evidence in those proceedings." (Compton, J., dissenting in part)).

In *Thorne v. Dep't of Public Safety*, 774 P.2d 1326, 1331–32 (Alaska 1989), we held that the appropriate sanction for the state's destruction of a videotape of the defendant performing field sobriety tests was to remand the case with directions to presume that the videotape would have been favorable to the defendant. We believe a similar sanction is appropriate here; on remand, the superior court should presume that the independent blood test Snyder sought, if provided, would have been favorable to him. *See*

---

**4.** AS 28.35.033(a)(1) provides:
 If there [is] 0.05 percent or less by weight of alcohol in the person's blood, or 50 milligrams or less of alcohol per 100 milliliters of the person's blood, or 0.05 grams or less of alcohol per 210 liters of the person's breath, it shall be presumed that the person was not under the influence of intoxicating liquor.

**5.** The dissent suggests that our holding will create unnecessary collateral disputes about whether failure to provide independent testing for a particular arrestee is excusable. We disagree. The resolution of such disputes is no different from resolution of collateral disputes that arise

generally in criminal cases, such as the availability of witnesses for pre-trial interrogation, the suppression of evidence allegedly illegally seized, severance of charges or parties, the admissibility of certain testimony, and similar issues.

**6.** At least two other states have concluded that a defendant is entitled to an independent blood test regardless of whether he submits to a police designated test. *See State v. Swanson*, 222 Mont. 357, 722 P.2d 1155, 1157 (1986); *Montano v. Superior Court Pima County*, 149 Ariz. 385, 719 P.2d 271 (1986).

AS 28.35.033 (establishing presumptions regarding intoxication on the basis of blood alcohol content).[7]

### B. *Subsequent Consent*

The court of appeals held that Snyder was not entitled to an instruction on the defense of subsequent consent because he had presented no evidence that rationally supported a verdict of acquittal based on the defense:

> When Trooper Spencer terminated the test after the fourth unsuccessful effort, Snyder repeated his offer to try again. Yet this offer was neither qualitatively nor quantitatively different than the offer that Snyder had made immediately before his fourth unsuccessful effort. . . .
>
> . . . .
>
> Considering the totality of the evidence in the light most favorable to Snyder, there is simply no rational basis to support a finding that Snyder's initial offers to take the test were made in bad faith but that his final offer to take the test was made in good faith. A juror who harbored a reasonable doubt as to whether Snyder's final offer to take the test was sincere could not rationally have concluded beyond a reasonable doubt that his initial offers were insincere. Conversely, no juror who thought Snyder's first four refusals were insincere could rationally have found his next offer to have been genuine. . . .
>
> . . . Under the circumstances of this case, a subsequent consent instruction could have been of no material value to the jury or the defense.

*Snyder*, 879 P.2d at 1029–30. The state essentially has adopted the reasoning of the court of appeals on this issue.

Snyder argues that the court of appeals' "qualitatively and quantitatively different" requirement is inconsistent with this court's holding in *Pruitt v. State*, 825 P.2d 887 (Alaska 1992).[8] He also argues that he is entitled to the jury instruction regardless of how weak or implausible the evidence may be.

▪▪▪ Whether or not a requested jury instruction should be given lies in the discretion of the trial court. *Buchanan v. State*, 561 P.2d 1197, 1207 (Alaska 1977). However, the general rule is that the defendant is entitled to a jury instruction on a defense theory if there is "some evidence" to support it. *See Pascoe v. State*, 628 P.2d 547, 549 (Alaska 1980); *Christie v. State*, 580 P.2d 310, 315 (Alaska 1978); *Carson v. State*, 736 P.2d 356, 359 (Alaska App.1987); *Brown v. State*, 698 P.2d 671, 673–74 (Alaska App. 1985) (citing *Toomey v. State*, 581 P.2d 1124, 1126 (Alaska 1978)); *Paul v. State*, 655 P.2d 772, 775 (Alaska App.1982); *Folger v. State*, 648 P.2d 111, 113 (Alaska App.1982).[9]

▪▪▪ As Snyder points out, the court of appeals repeatedly has opined that "[t]he burden of producing 'some evidence' is not a heavy one" and that "[e]ven weak and implausible claims must be submitted to the jury." *Carson*, 736 P.2d at 359; *see also Brown v. State*, 698 P.2d at 674; *Brown v. Anchorage*, 680 P.2d 100, 103 (Alaska App. 1984); *Paul*, 655 P.2d at 775. In deciding whether the defendant has presented "some evidence," the trial judge must determine whether the evidence would permit a reasonable juror to conclude that a reasonable doubt has been raised as to the existence of the defense. *Christie*, 580 P.2d at 315; *Carson*, 736 P.2d at 359.

---

7. In view of our decision on his constitutional claim, we do not address Snyder's claim that he has a statutory right to an independent chemical test regardless of whether or not he submits to a breath test.

8. In *Pruitt* this court adopted a "flexible" rule that allows a subsequent consent to a breath test to cure a prior refusal under some circumstances. *Pruitt*, 825 P.2d at 894. The factors the court enunciated for determining whether the arrestee's subsequent consent cures the refusal are: whether the subsequent consent occurred within a reasonable time after the prior refusal; whether the test administered following the sub-

sequent consent will still be accurate; whether the test will result in any substantial expense or inconvenience to the police; and whether the arrestee has been in continuous custody of the arresting officer and under observation for the entire time. *Id.*

9. Relatedly, Alaska Criminal Rule 30 provides that the court "shall instruct the jury on all matters of law which it considers necessary for the jury's information in giving their verdict." Alaska R.Crim.P. 30(b); *see Sears v. State*, 713 P.2d 1218, 1219 (Alaska App.1986).

In our view, Snyder's offer to blow into the Intoximeter "one more time" following Spencer's threat of a Refusal charge is sufficient evidence of Snyder's subsequent consent to warrant an instruction on the defense. Contrary to the court of appeals' conclusion, a rational juror who thought Snyder's initial refusals were insincere could have believed Snyder was sobered by the threat of a Refusal charge and concluded that his subsequent offer was sincere. Moreover, there is no indication that an additional test would have significantly delayed or inconvenienced the police, or that any of the other *Pruitt* factors weigh against allowing Snyder's subsequent consent to cure his prior refusals. *See Pruitt*, 825 P.2d at 894.

Assuming for the sake of argument that under the circumstances of this case Snyder's final offer had to be "qualitatively [or] quantitatively" different from his previous offers to be an effective consent, we nevertheless believe the weighing of the *bona fides* of Snyder's offer is a task for the jury.[10] The jury very well may have concluded Snyder's consent was ineffective because his offer was merely another attempt to feign willingness to submit to a breath test, but it was the jury's conclusion to draw.

Since there was some evidence to support Snyder's requested subsequent consent instruction, the superior court abused its discretion in refusing to give the instruction.

## IV. *CONCLUSION*

The state should have provided Snyder with the opportunity to obtain an independent test of his blood alcohol content. The trial court should have instructed the jury on the defense of subsequent consent. Snyder's DWI and Refusal convictions are REVERSED and the case is REMANDED for further proceedings consistent with this opinion.

10. Snyder's last offer was, of course, *quantitatively* different—he made it one more time.

1. A person in Snyder's position has a right to be independently tested at his expense. In exercising that right, Snyder would have been entitled to make arrangements to be tested while in custody or upon release on bond. Police could not interfere with that effort, apart from satisfying

EASTAUGH, Justice, dissenting in part.

I disagree with Part III.A of the court's decision. The court there holds that "the Due Process Clause of the Alaska Constitution entitles a DWI arrestee to an independent chemical test even if that person refuses to take the statutorily prescribed breath test." Op. at 1277. In my view, the Due Process Clause confers no such right.

This is a DWI case, but it appears to me that the result the court reaches here has much broader implications. Absent legitimate public safety concerns, police may not prevent an accused from gathering exculpatory evidence, and consequently may not prevent a DWI accused from arranging to be independently tested while still in custody.[1] The court, however, goes further. At a minimum it requires police to transport unreleased DWI accuseds in a timely fashion to a place where their blood can be drawn for independent testing.[2] In effect, police must now actively help the accused gather potentially exculpatory evidence.

Our prior decisions do not require or forecast this result. The cases most prominently cited by this court, *Gundersen v. Municipality of Anchorage*, 792 P.2d 673 (Alaska 1990), and *Lauderdale v. State*, 548 P.2d 376 (Alaska 1976), are readily distinguishable and do not hint at the existence of the right conferred today. Those cases expressly state that the primary purpose of the independent test is to allow an arrestee the opportunity to challenge the state's blood or breathalyzer test results submitted into evidence. *Gundersen*, 792 P.2d at 676; *Lauderdale*, 548 P.2d at 381–82. Due process requires that this opportunity be provided to arrestees to rebut that evidence. In *Lauderdale*, this court held that

Lauderdale is asking for the opportunity to test the reliability or credibility of the re-

valid police interests, such as completing the process of charging and booking Snyder and maintaining facility security.

2. The court apparently would not impose any duty of assistance with respect to an accused who has been released. The right conferred here appears to apply only to accuseds in custody.

sults of the breathalyzer test.... A denial of the right to make such analysis, that is to say, to "cross-examine" the results of the test, would be reversible error without any need for a showing of prejudice. It would be a denial of a right to a fair trial, and a fair trial is essential to affording an accused due process of law.

548 P.2d at 381. In *Gundersen,* we held that

Since a defendant must provide the state with potentially incriminating evidence at the risk of criminal penalties, we hold that due process requires that the defendant be given an opportunity to challenge the reliability of that evidence in the simplest and most effective way possible, that is, an independent test.

792 P.2d at 676.

In *Gundersen,* the accused submitted to a breath test which incriminated him. The sample was not preserved. This court found a due process right to an independent test in that context, holding that

We agree with the court of appeals that if the police choose not to preserve a breath sample, due process requires that they give clear and express notice of a defendant's right to an independent test and offer assistance in obtaining one in order to introduce police-administered test results at trial.

792 P.2d at 677.

As the court of appeals correctly observed when it affirmed Snyder's conviction:

The general rule ... is that the state has no duty to collect evidence; its duty of preservation applies only to evidence that has actually been gathered.

Under the due process clause of the Alaska Constitution, a limited exception to the general rule applies to the extent that the state is required to gather and pre-

serve evidence affording DWI arrestees a reasonable opportunity to challenge the result of a breath test obtained pursuant to the implied consent statutes. By definition, however, this exception to the general rule attaches only after an arrestee submits to a breath test.

*Snyder v. State,* 879 P.2d 1025, 1028 (Alaska App.1994) (citations omitted).

Thus, these cases have read due process to require police to assist an accused in obtaining an independent blood test, not because due process accords the accused a right to a blood test, but because due process requires that the accused have an opportunity to rebut the breath test administered by police. These cases do not require the result reached here, which creates a due process right to an independent blood test even if the accused refuses the police breath test.

The result the court now reaches cannot logically be limited to blood samples of DWI arrestees, but has much greater implications given its reliance on a theory that police must gather "inherently evanescent" evidence which potentially exculpates persons accused of "serious crimes such as DWI." Op. at 1278, 1279. The court cites two well-founded propositions:

It is a fundamental tenet of due process of law that a person accused of a crime has a right to attempt to obtain exculpatory evidence. And it is well established that law enforcement has a duty to preserve and disclose material evidence, the dereliction of which can deprive the accused of due process.

Op. at 1277. But equally well-founded is the general proposition that the state normally has no obligation to aid a suspect in gathering potentially exculpatory evidence, as the court expressly recognizes.[3] Op. at 1277–

---

**3.** The court states that "[a]t least two other states have concluded that a defendant is entitled to an independent blood test regardless of whether he submits to a police designated test." Op. at 1279 n. 6. In support of this assertion, the court cites *Montano v. Superior Court Pima County,* 149 Ariz. 385, 719 P.2d 271, 277 (1986) (holding that an arrestee is entitled to be informed of the right to an independent test when the implied consent law is not invoked), and *State v. Swanson,* 222 Mont. 357, 722 P.2d 1155, 1157 (1986). Those

jurisdictions that have granted the right to an independent test have been extremely cautious in granting that right. The cases explicitly state that no affirmative burden is imposed upon the police to assist the arrestee in obtaining the test; instead, the requirement is only that they not impede an arrestee's efforts to obtain a test. These decisions make it clear that the police have no affirmative duty to assist an accused in obtaining an independent blood test, such as the duty the court would impose here. *Montano,*

1278. DWI evidence is not unique. Nothing logically sets it apart from other types of evidence,[4] much of which may rapidly degrade until it is no longer probative of innocence. Its value may be lost before the accused is released or can make efforts to preserve it. "Evanescent" alcohol levels bear not only upon guilt in DWIs, but upon other issues, such as diminished capacity, in other crimes more serious than DWI. Other chemicals in an arrestee's blood can be equally ephemeral, and testing potentially just as exculpatory. Crime scene evidence may be lost if not promptly preserved; it is always potentially exculpatory. Even for misdemeanors, the consequences of failing to discover and preserve exculpatory evidence may be severe. Contrary to the court's assertion, there is nothing unique about the "evidentiary circumstances attendant to DWI arrests." Op. at 1278. ·

Fairness and justice do not require the result reached here. It is one thing to impose a duty to aid in independent testing if the prosecution has access to highly-persuasive breath testing results. The most effective way to dispute such results is through independent testing. But because Snyder refused to give a breath sample, there are no police test results. Further, the record does not reveal that Snyder was precluded from arranging an independent blood test to be conducted while he was still in custody.

The duty the court now imposes creates procedural and practical problems which, assuming they can be surmounted by diligent and exacting police work, illustrate not only why imposing such a duty is a bad idea, but also why the existence of such a right is constitutionally improbable. Snyder demanded an independent test, but if the right now conferred has due process origins, at a minimum police must disclose the right to DWI arrestees; some will be incapable of making an informed decision whether to exercise the right. Presumably, also, the public must pay for an independent test if the arrestee cannot. Transporting arrestees to the place of independent testing will reduce the number of officers available to patrol actively for DWI offenders (or to respond to other reported crimes). I do not agree that the burden that will be imposed on the state (and other non-state law enforcement agencies) will only be "slight," Op. at 1279, but it also seems probable that collateral disputes will arise about whether the failure to provide independent testing for particular arrestees is excusable because it was in fact completely infeasible or could be obtained only after extraordinary effort. Assuming for sake of discussion that an arrestee is entitled to independent testing within two or three hours after arrest (keeping in mind that it is in the arrestee's interest to delay the test as long as possible), one can foresee that due process could require that an arrestee be transported over great distances. If there is no person qualified to draw blood for an independent test in the near vicinity, does due process require that the arrestee be transported ·to the nearest community by road or air at public expense?

Finally, the court fashions an unwarranted remedy which illustrates why no such right should be conferred. Reasoning that because police did not administer a breath test, there are no police test results to suppress,

719 P.2d at 277 (holding that "[t]he state has no obligation … to actually gather evidence for a suspect, but in the absence of the implied consent law it must provide suspects a fair chance to gather evidence by informing them of their right to testing"); *State v. Peterson*, 227 Mont. 418, 739 P.2d 958, 961 (1987) (clarifying rule in *Swanson*). Furthermore, *State v. Miller*, 161 Ariz. 468, 778 P.2d 1364, 1366 (App.1989), held that "*Montano* is limited to its particular facts, and that due process does not require that a suspect be advised of his right to an independent test where the state has invoked the implied consent law." *See also State ex rel. Dean v. City Court*, 163 Ariz. 510, 789 P.2d 180, 183–84 n. 4 (1990) (noting that "[f]ailure to inform the defen-

dant of his right to an independent test did not constitute interference with his right to obtain the test, where the defendant was afforded a fair chance to obtain independent evidence" (citing *State v. Ramos*, 155 Ariz. 153, 745 P.2d 601, 604 (App.1987))); *State v. Superior Court*, 179 Ariz. 343, 878 P.2d 1381, 1383 (App.1994); *State v. Vannoy*, 177 Ariz. 206, 866 P.2d 874, 877 (App. 1993).

4. In the past, this court has drawn analogies between preserving breath samples and preserving other types of evidence, such as tape recordings of police interrogations. *See Stephan v. State*, 711 P.2d 1156, 1160 (Alaska 1985).

the court requires the trial court on remand to "presume that the independent blood test Snyder sought, if provided, would have been favorable to him." Op. at 1280. Thus, Snyder, by refusing to give a breath sample to police, has the best of all worlds: he prevented police from gathering incriminating test results, and he receives a presumption that his independent blood test would have been exculpatory. Snyder's refusal, consequently, not only deprived the state of incriminating evidence, but generates the equivalent of exculpatory evidence. I am not suggesting that some other remedy, such as dismissal, would be appropriate. Instead, the remedy reveals the fundamental illogic in conferring any such right in the first place.