**Leonard P. BRIGGS, Appellant,**

v.

**STATE of Alaska, DEPARTMENT OF PUBLIC SAFETY, DIVISION OF MOTOR VEHICLES, Appellee.**

**No. S–1243.**

Supreme Court of Alaska.

Feb. 20, 1987.

---

**2.** [These "genuine issues" have since been resolved by stipulation of the parties.]

Melvin M. Stephens, II, Kodiak, for appellant.

Judith Andress, Asst. Atty. Gen., Anchorage, Harold M. Brown, Atty. Gen., Juneau, for appellee.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

RABINOWITZ, Chief Justice.

The primary issue here is whether breathalyzer test results suppressed on due process grounds in a criminal prosecution were improperly admitted in a subsequent license revocation hearing.

## I. BACKGROUND.

Leonard P. Briggs was stopped and arrested for driving while intoxicated (DWI). At the Kodiak police station, he was given a breathalyzer test using an Intoximeter 3000, which produced a printout showing a blood-alcohol content of 0.129%.[1] No breath sample was preserved, nor was Briggs given a blood test to independently verify the breathalyzer test results.

Briggs was charged with DWI and with operating a motor vehicle while having a blood-alcohol content 0.10% or more. An evidentiary hearing on Briggs' motion to suppress the breathalyzer test results was held in district court. In conjunction with this hearing, the prosecution submitted the affidavits of two Kodiak police officers. The officer who had arrested Briggs stated that Briggs initially requested an independent blood test but withdrew his request after the second intoximeter reading. The officer in charge of the intoximeter, Floyd Steele, stated that on the date of Briggs' arrest the Kodiak Police Department did not have any of the perchlorate tubes used to collect breath samples, and that the department's normal operating procedure in that situation was to offer a defendant an independent blood test. Steele further stated that perchlorate tubes were not being used "because of problems with the adaptor system." The district court ordered suppression of the breathalyzer test results.

The state filed a motion for reconsideration and therewith submitted an affidavit stating that Steele, who had not been present at the evidentiary hearing, had subsequently advised the prosecution staff "that Briggs told him to forget the blood test because he knew that he was drunk after taking the second intoximeter test." In opposition Briggs submitted an affidavit stating that he never told any police officer to forget about the blood test and that at no time did he admit that he was drunk. The district court denied the state's motion, finding specifically that: (1) Steele's affidavit made no mention of Briggs' comments regarding his right to an independent blood test; (2) the "new evidence" to be introduced through Steele's testimony was easily discoverable by the state's due diligence; and (3) the motion to reconsider was untimely.

The state did not seek appellate review of the district court's suppression order and subsequently dismissed the DWI charge against Briggs. As a result of the intoximeter reading, however, the Department of Public Safety, Division of Motor Vehicles, seized and revoked Briggs' driv-

---

1. The intoximeter initially indicated a blood-alcohol content of 0.146% but failed to produce a printout of this reading.

er's license for one year pursuant to AS 28.15.165.[2] Briggs requested administrative review of the license revocation.[3] The hearing officer admitted the breathalyzer test results into evidence over Briggs' objection and ultimately affirmed the revocation of Briggs' license. Thereafter the superior court affirmed the hearing officer's decision. Briggs now appeals to this court.

## II. WERE THE BREATHALYZER TEST RESULTS IMPROPERLY ADMITTED?

We conclude that the hearing officer improperly admitted the breathalyzer test results in the license revocation proceeding.

▬▬▬ In the context of another license revocation proceeding, we held that the due

process clause of the Alaska Constitution requires the state to take reasonable steps to preserve the breath sample or to make provision for the defendant to independently verify the breathalyzer test results. *Champion v. Department of Public Safety,* 721 P.2d 131, 132 (Alaska 1986). Absent such procedures, breathalyzer test results are simply inadmissible. Because no breath sample was preserved and no second test was given in this case, the hearing officer's decision to admit the breathalyzer test results was improper.[4]

## III. REVERSAL OR REMAND?

The state argues that this case should be remanded for a further administrative

---

**2.** AS 28.15.165 provides in relevant part:

> *Administrative revocations resulting from chemical sobriety tests and refusals to submit to tests.* (a) If a chemical test administered under AS 28.35.031(a) to a person driving a motor vehicle for which a driver's license is required produces a result described in AS 28.35.030(a)(2) ... a law enforcement officer shall read a notice and deliver a copy to the person. The notice shall advise that
> (1) *the department intends to revoke the* person's driver's license ...;
> (2) the person has the right to administrative review of the revocation ...;
> (3) the notice itself is a temporary driver's license that expires seven days after it is delivered to the person;
> (4) revocation of the person's driver's license ... shall take effect upon expiration of the temporary driver's license unless the person within seven days requests an administrative review.
> (b) After reading the notice under (a) of this section, the law enforcement officer shall seize the person's driver's license ... and shall deliver it to the department....

**3.** As to the scope of the hearing and other procedures on administrative review, AS 28.15.166 provides in part:

> (g) The hearing under this section shall be limited to the issues of whether the arresting officer had reasonable grounds to believe that the person was driving a motor vehicle while intoxicated and whether
> (1) the person refused to submit to a chemical test under AS 28.35.031(a) after being advised that refusal would result in the suspension, revocation, or denial of the person's license ... and that the refusal is a misdemeanor; or

> (2) the chemical test authorized under AS 28.35.031(a) and administered to the person produced a result described in AS 28.35.030(a)(2).
> (h) The determination of the hearing officer may be based upon the sworn report of a law enforcement officer. The law enforcement officer need not be present at the hearing unless either the person requesting the hearing or the hearing officer requests in writing before the hearing that the officer be present. If in the course of the hearing it becomes apparent that the testimony of the law enforcement officer is necessary to enable the hearing officer to resolve disputed issues of fact, the hearing may be continued to allow the attendance of the law enforcement officer.
> ....
> (m) Notwithstanding AS 28.05.141(d), within 30 days of the issuance of the final determination of the department, a person aggrieved by the determination may file an appeal in superior court for judicial review of the hearing officer's determination. The judicial review shall be on the record, without taking additional testimony. The court may reverse the department's determination if the court finds that the department misinterpreted the law, acted in an arbitrary and capricious manner, or made a determination unsupported by the evidence in the record.

**4.** We note that an issue is raised as to whether the *Champion* decision should be applied here. *Champion* was decided on June 20, 1986. Briggs' breathalyzer test was administered on April 13, 1984, and the administrative hearing held on August 24, 1984. This court has weighed certain criteria in determining the extent to which a new rule of law should be applied in the criminal area: (1) the purpose to

hearing to determine whether the state's failure to preserve a breath sample was so negligent as to warrant suppression. The state reminds us that the *Serrano/Champion* standard requires the state to take "reasonable steps" to preserve the sample or provide the opportunity for independent testing. The state suggests that a further proceeding may disclose that "either the police officers were not negligent *or* that they encouraged Briggs to obtain an independent 'chemical analysis of blood,' which Briggs declined to do."

 Briggs responds that the record demonstrates that the police department's failure to preserve a breath sample was attributable to unspecified problems with the perchlorate tubes used to collect the breath samples,[5] problems which resulted in an intentional decision not to collect breath samples. Briggs argues in essence that this intentional decision cannot be construed as a negligent failure to preserve a breath sample. He also points out that questions concerning the independent blood test were resolved in his favor at the crimi-

nal suppression hearing held in district court:

> Both sides agreed that Pat Briggs had requested an independent blood test and that no such test was provided. The State alleged that this was because Mr. Briggs had withdrawn the request; Briggs flatly denied having done so; and the trial court resolved the issue in Briggs' favor.

Based on the foregoing, Briggs contends that the state is collaterally estopped from relitigating whether the state took reasonable steps to preserve a breath sample.

We agree with Briggs. The requirements for collateral estoppel are (1) the issue decided in a prior adjudication was precisely the same as that presented in the action in question; (2) the prior litigation must have resulted in a final judgment on the merits; and (3) there must be "mutuality" of parties, *i.e.*, collateral estoppel may be invoked only by those who were parties or privies to the action in which the judgment was rendered. *Pennington v. Snow,* 471 P.2d 370, 375, 377 (Alaska 1970); *see*

---

be served by the new standards; (2) the extent of reliance by law enforcement authorities on the old standards; and (3) the effect on the administration of justice of a retroactive application of the new standards. *State v. Glass,* 596 P.2d 10, 13 (Alaska 1979); *Lauderdale v. State,* 548 P.2d 376, 383 (Alaska 1976).

In *Champion* this court made clear that the purpose of this rule was essential to a defendant's due process right to "cross-examine" the results of the breathalyzer test and to his right to a fair trial. 721 P.2d at 132–33. After *Municipality of Anchorage v. Serrano,* 649 P.2d 256 (Alaska App.1982), the police could no longer rely in good faith on procedures that did not preserve breath samples or provide for a second test. In *Serrano,* the court of appeals held that in criminal prosecutions the state must preserve breath samples or provide for alternative verification of breathalyzer test results; the fact that *Serrano* was not extended to license revocation proceedings until later is irrelevant to the reliance question. The police do not distinguish between the potential use of breathalyzer test results in a criminal prosecution or in a license revocation proceeding when they administer the test to a person arrested for DWI. Finally, the effect of retroactive application of *Champion* on the administration of justice would be minimal, since law enforcement authorities presumably adhered to the rule announced in *Serrano.*

We therefore conclude that *Champion* should be applied retroactively to all cases which were pending on, or in which the breathalyzer test was administered after August 6, 1982, the date of the *Serrano* decision. In *Farleigh v. Municipality of Anchorage,* 728 P.2d 637 (Alaska 1986), we noted that "[r]eview of prior decisions indicates that the purpose to be served by the new rule is of critical importance in determining the extent to which the new rule is to be applied retroactively." *Id.* at 639.

We concluded in *Farleigh* that

> [t]he *Serrano* rule clearly serves to ensure defendants a fair trial. Consequently, since petitioners' cases were not finally disposed of at the time *Serrano* was announced, and since each had moved to suppress the results of his breathalyzer test on the ground that the police failed to preserve a breath sample, petitioners are entitled to receive the benefit of the *Serrano* decision.

*Id.* at 641.

5. An affidavit submitted by the police department stated that, "because of problems with the perchlorate tubes and their adaptors to the intoximeter we have, since the intoximeter has been used, largely used the independent blood test."

*also Kott v. State,* 678 P.2d 386, 391 (Alaska 1984) (upholding mutuality requirement in criminal context).

Here, in ruling that the breathalyzer test results were to be suppressed, the district court necessarily decided that the police had not taken reasonable steps to preserve the breath samples or to provide for an independent test. That issue is dispositive of the license revocation hearing.[6]

Concerning the finality requirement for collateral estoppel, we observe that the state did not appeal the district court's suppression ruling. For purposes of issue preclusion, "final judgment" includes "any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect." Restatement (Second) of Judgments § 13 (1982). *See United States ex rel. DiGiangiemo v. Regan,* 528 F.2d 1262, 1265 (2d Cir.1975) (quoting Restatement), *cert. denied,* 426 U.S. 950, 96 S.Ct. 3172, 49 L.Ed.2d 1187 (1976); *see generally Lummus Co. v. Commonwealth Oil Refining Co.,* 297 F.2d 80, 87–90 (2d Cir.1961), *cert. denied,* 368 U.S. 986, 82 S.Ct. 601, 7 L.Ed.2d 524 (1962). Factors supporting a conclusion that a decision is final for this purpose are "that the parties were fully heard, that the court supported its decision with a reasoned opinion, that the decision was subject to appeal or was in fact reviewed on appeal." Restatement (Second) of Judgments § 13 comment g (1982); *Regan,* 528 F.2d at 1265.

We are of the view that application of these factors here warrants the conclusion that the district court's decision to suppress the breathalyzer test results should be considered a final judgment for purposes of issue preclusion.[7] First, the parties were fully heard. Second, the district court's decision on the suppression of the breathalyzer test results was appealable.[8] Further, in the context of this case, it is clear that the district court's decision reflects its conclusion that a violation of due process occurred based on the state's failure to provide independent verification of the breathalyzer test results.

As previously noted, the third requirement for application of collateral estoppel is that of privity. Under the circumstances presented here, we hold that the Department of Public Safety and the state were in privity. "The general rule is that litigation by one agency is binding on other agencies of the same government, but exceptions may be warranted if there are important differences in the authority of the respective agencies." 18 C. Wright, A. Miller, and H. Cooper, *Federal Practice and Procedure* § 4458, at 504–05 (1981). The test for determining whether the government is collaterally estopped in subsequent litigation has been stated as "whether or not in the earlier litigation the representative of the [government] had authority to represent its interests in a final adjudication *of the issue in controversy." Sunshine Anthracite Coal Co. v. Adkins,* 310 U.S. 381, 403, 60 S.Ct. 907, 917, 84 L.Ed. 1263, 1276 (1940) (emphasis added).

The suppression issue decided by the district court was fully litigated by the prosecution at the suppression hearing. The

---

**6.** This is not a case where an acquittal from a dismissal of criminal charges is being used to try to dismiss a license revocation proceeding. *See Avery v. State,* 616 P.2d 872, 873–74 (Alaska 1980) (collateral estoppel does not apply in parole revocation proceedings against parolee on charges for which he has been acquitted because adjudication of charges under the beyond a reasonable doubt standard does not constitute an adjudication on the preponderance of evidence standard). Here the criminal court's finding of fact is being invoked to bar a possible contrary finding of fact, using the same burden of proof, in the subsequent license revocation proceeding.

**7.** *See Regan,* 528 F.2d at 1266 ("Assuming that the state has had an opportunity for a full hearing on suppression and at least one appeal as of right, we think due process would forbid relitigation of the issue determined adversely to it...."); *cf. Coney v. Municipality of Anchorage,* 725 P.2d 709 (Alaska 1986) (holding pretrial suppression hearing not to be given preclusive effect where defendant was faced with a dilemma of whether to invoke fifth amendment right not to testify or to have the issue precluded in subsequent civil suits).

**8.** *See* AS 22.07.020.

interests of the Department of Public Safety in litigating this issue were thus adequately represented.[9] We therefore conclude that all the requirements for collateral estoppel have been met, and the state is therefore barred from relitigating the suppression issue.

The decision of the superior court affirming the revocation of Briggs' driver's license is REVERSED.

**9.** The instant case is distinguishable from situations where the differing interests of the prosecutor and the administrative agency might justify a refusal to apply collateral estoppel. For example, this is unlike a case in which the defendant is seeking estoppel effect from a prosecutor's dismissal of charges or stipulation of facts. There the prosecutor's decision to dismiss or to stipulate might reflect interests not shared by the administrative agency and thus should not be used against the agency, which was not entitled to appear at the criminal proceeding. Likewise, this is not a case where the defendant attempts to use a criminal acquittal for estoppel effect at the administrative proceeding. There the differing burdens of proof would justify refusal to give collateral estoppel effect. *See supra* note 6.