Ted FEE, Appellant,

v.

STATE of Alaska, Appellee.

No. A–3868.

Court of Appeals of Alaska.

Feb. 7, 1992.

Cynthia Drinkwater, Asst. Public Defender, Palmer, and John B. Salemi, Public Defender, Anchorage, for appellant.

William L. Estelle, Asst. Dist. Atty., Steven H. Morrissett, Dist. Atty., Palmer, and Douglas B. Baily, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and MANNHEIMER, JJ.

## OPINION

COATS, Judge.

Ted Fee was convicted upon his plea of no contest of the charge of refusing to submit to a chemical test of his breath. AS 28.35.032(f). He reserved his right to appeal the district court's denial of his motion to suppress the evidence of his alleged refusal to take the Intoximeter test. *See Oveson v. Anchorage,* 574 P.2d 801, 803 n. 4 (Alaska 1978); *Cooksey v. State,* 524 P.2d 1251 (Alaska 1974).

Fee was arrested for driving while intoxicated (DWI), AS 28.35.030, by Alaska State Trooper William McKillop. McKillop took Fee to the Palmer trooper station, where he asked Fee to submit to a breath test of his blood alcohol level on the Intoximeter machine.

At his request, Fee was given the opportunity to telephone his attorney in Fairbanks. Following Fee's phone call to his attorney, McKillop read Fee the implied consent notice, informing him of his legal obligation to submit to a chemical test of his breath. Fee stated that he was willing to take the test if his attorney came to the station and advised him in person to do so, but that he would not take the test without having his attorney present. McKillop took this response to be a refusal to take the test.

Fee argues that all evidence of his alleged refusal to take the Intoximeter test should have been suppressed under the rule of *Graham v. State,* 633 P.2d 211 (Alaska 1981). In *Graham,* the supreme court held that:

[W]here an arrested person refuses to submit to a breathalyzer test, the administering officer must inquire into the nature of the refusal and, if it appears that the refusal is based on a confusion about a person's rights, the officer must clearly advise that person that the rights contained in the *Miranda* warning do not apply to the breathalyzer examination.

633 P.2d at 215 (applying *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)). The *Graham* rule applies only in those cases in which the arrestee has been advised by an officer of his or her *Miranda* rights prior to being asked to submit to chemical testing. *Lively v. State,* 804 P.2d 66, 69 (Alaska App.1991). McKillop read Fee his *Miranda* rights while transporting him to the trooper station.

The state appears to concede that the *Graham* rule applies in this case. The state argues only that Fee has not sustained his burden of showing that he was in fact confused by, and failed to appreciate the distinction between his *Miranda* right to decline to answer any questions without having an attorney present and the requirement that he decide without the presence of his attorney whether to submit to Intoximeter testing.

The state's apparent concession that the *Graham* rule controls here is well founded. Although *Graham* was an administrative appeal of a civil driver's license revocation by the Department of Public Safety, we see no reason not to extend the rule announced in that case to cases involving criminal charges for refusal to submit to chemical testing. The *Graham* rule arose out of the supreme court's concern that in cases in which *Miranda* warnings had been read, "the arrested person may be misled into believing that he or she either has a right to have counsel present before deciding whether to take the test, or can refuse to submit to the test without suffering the threatened consequences of that refusal." 633 P.2d at 215.

The danger of confusion engendered by the *Miranda* warnings is even more compelling when the refusal leads to criminal charges than when the sanction is an administrative driver's license revocation. A person who refuses to submit to chemical testing because of confusion caused by the arresting officer's advisement of his or her *Miranda* rights cannot be held criminally liable for that refusal.

The state points out that even when it has been established that the defendant was read the *Miranda* rights before being asked to submit to a breath test, the defendant has the burden of showing that he or she was in fact confused about those rights. *Graham,* 633 P.2d at 215. The state argues that Fee has failed to sustain this burden. We disagree.

The DWI processing videotape played at the hearing on Fee's motion to suppress clearly indicates that Fee presented sufficient evidence to show that Fee was in fact confused about his rights. In response to the reading of the implied consent form and the trooper's requests that he take the Intoximeter test, Fee stated repeatedly that he was willing to take the test upon his attorney's advice and that he wanted only to wait until his attorney arrived at the station. Fee twice asserted that it was his "right" to wait for his attorney before deciding whether to take the test. Trooper McKillop did not respond directly to the first of these assertions. The second time Fee said, "I'm not going to do it until my attorney is present ... that's my right," McKillop responded, "No, it is not your right, sir." When Fee then said, "Yes, it is, sir," McKillop did not explicitly inform Fee that he had no right to have his attorney present when deciding whether to take the test. Fee's apparent confusion about the interplay between his right to remain silent and the request that he take the Intoximeter test is further demonstrated by the following exchanges, all recorded on the videotape:

McKILLOP: We are not going to wait for your attorney to get here from Fairbanks.

FEE: So what do you want me to do, man, confess?

McKILLOP: No, I want you to decide whether or not you're going to take the Intoximeter test.

. . . .

McKILLOP: Well, we're not going to sit here and wait for your attorney to get here from Fairbanks.

FEE: So what do you want me to do? Confess that I killed 255 people?

McKILLOP: No, I want you to tell me whether or not you're going to take this Intoximeter.

. . . .

McKILLOP: And, we are not going to wait for (your attorney).

FEE: And I'm not going to let you use anything I may or might say against me, man, in a court of law.

The state argues that Trooper McKillop satisfied the requirements of the *Graham* rule by informing Fee that he would not wait for Fee's attorney to arrive from Fairbanks and that Fee had to decide on his own whether to take the test. District Court Judge Peter G. Ashman essentially adopted this view. Judge Ashman accepted Fee's claim of confusion over his *Miranda* rights; in Judge Ashman's view, however, Fee's confusion over his rights resulted not from the lack of an adequate explanation by McKillop, but rather from the fact that Fee was being "sort of oppositional" and did not listen to McKillop's advice. Finding that McKillop's statements to Fee would have been sufficient to inform a reasonable person in Fee's shoes that the test was mandatory, Judge Ashman concluded that McKillop had substantially complied with *Graham.*

■ Judge Ashman erred in concluding that McKillop's explanation complied with the requirements of *Graham.* The *Graham* rule is triggered when a DWI arrestee who has been given *Miranda* warnings refuses to submit to a breath test under circumstances indicating that the refusal may stem from the arrestee's mistaken be-

lief that, under *Miranda,* there is a right to decline the test or to insist on the presence of counsel. Once triggered, the *Graham* rule expressly requires the arresting officer to "clearly advise [the arrestee] that the rights contained in the *Miranda* warning do not apply to the breathalyzer examination." *Graham,* 633 P.2d at 215. Thus, under *Graham,* it is not enough for the officer to advise the arrestee that the breath test is mandatory; the officer must also specifically explain that, under the law, the *Miranda* rights to silence and to the presence of counsel do not apply to the breath test.[1]

In *Cameron v. Commonwealth,* 581 A.2d 689, 690–91 (Pa.Commw.1990), the court found that statements similar to the statements which Trooper McKillop made to Fee were insufficient. In *Cameron,* the court was interpreting a decision by the Pennsylvania Supreme Court in *Department of Transportation, Bureau of Traffic Safety v. O'Connell,* 521 Pa. 242, 555 A.2d 873 (1989), a case in which the Pennsylvania Supreme Court placed an obligation on the police to clarify the defendant's rights similar to the obligation which the Supreme Court of Alaska placed on the police in *Graham.* In *Cameron,* the court stated:

> We find that none of the statements of record made by the Township Police constitute a qualifying instruction as contemplated by *O'Connell.* Absent from all of these statements is a clear communication that the right to counsel referred to in *Miranda* warnings is inapplicable to a breathalyzer test. Telling an arrestee that a lawyer need not be present or that consulting with an attorney or anyone else is not necessary before taking the test are insufficient instructions. Telling an arrestee that he must make this decision on his own is also insufficient. None of these statements informs an arrestee adequately of the extent of the right to counsel, nor does anyone [sic] of them clarify for an arrestee that the right is inapplicable to chemical testing for intoxication. Clearly indicating that the right to counsel does not extend to a breathalyzer test achieves the *O'Connell* court's intent to insure that arrestees who exhibit confusion over their *Miranda* rights are not being misled into making *uninformed* and unknowing decisions to take the test.

581 A.2d at 690–91.

Because we find that Fee was not clearly advised that his *Miranda* rights did not apply to the request that he submit to an Intoximeter testing, we REVERSE Fee's conviction for refusal to submit to a chemical test.[2]

---

**1.** Judge Ashman found that Fee was being argumentative and that a reasonable person in Fee's position would have understood that he was required to take the Intoximeter test. Regardless of the reasonableness of Fee's confusion, McKillop was obligated to comply with *Graham* by specifically advising Fee that his *Miranda* rights did not apply to the breath test. We emphasize, however, that a different issue would be presented if McKillop's explanation to Fee had complied with *Graham,* but Fee had nonetheless continued to be argumentative, and had thus remained confused. Because this latter issue does not arise under the facts of this case, we do not address it.

**2.** Our resolution of this issue makes it unnecessary for us to consider Fee's argument that the police did not afford him an opportunity to consult privately over the phone with his counsel.