Dennis SNYDER, Appellant,

v.

STATE of Alaska, DEPARTMENT OF
PUBLIC SAFETY, DIVISION OF
MOTOR VEHICLES, Appellee.

No. S–9035.

Supreme Court of Alaska.

Sept. 28, 2001.

Robert John, Law Office of Robert John, Fairbanks, for Appellant.

Marilyn J. Kamm, Assistant Attorney General, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before FABE, Chief Justice, MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

### OPINION

FABE, Chief Justice.

## I. INTRODUCTION

Dennis Snyder was convicted of driving while intoxicated and refusal to take a breath alcohol test, but in a previous decision we determined that Snyder's due process rights were violated by the police's failure to allow Snyder to obtain an independent blood alcohol test. We reversed and remanded both criminal convictions, instructing the lower court to presume that the results of such a blood test would have been favorable to Snyder. In a separate proceeding arising from the same incident, the Department of Public Safety revoked Snyder's driver's license for refusal to take a breath alcohol test. Snyder now argues that the license revocation should be reversed, claiming in part that the presumption that he would have passed a blood test should have precluded the hearing officer from finding that he refused the breath test. Because the hearing officer's conclu-

sion that Snyder refused a breath test would not have been affected by the presumption that Snyder would have passed a blood test, we affirm the revocation of his license.

## II. FACTS AND PROCEEDINGS

### A. Facts

In March 1993 an Alaska State Trooper found Dennis Snyder, apparently intoxicated, trying to extricate his car from a snow berm. Snyder's subsequent failure to complete a breath alcohol test resulted in two legal actions: a criminal case and the revocation of license case now before us. We considered Snyder's appeal of his criminal convictions for driving while intoxicated (DWI) and refusing to submit to a breath test (refusal) in *Snyder v. State (Snyder I)* in 1996.[1] The following facts are reproduced from that opinion:

On the night of March 20, 1993, Alaska State Trooper Sgt. Charles Lovejoy found Snyder in his car, which had slid into a snow berm at an intersection. According to Lovejoy, Snyder did not appear to have been injured in the mishap and did not complain of pain. Lovejoy suspected that Snyder had been drinking and therefore administered a number of field sobriety tests. He then placed Snyder under arrest for DWI.

Alaska State Trooper Dixie Spencer drove Snyder from the scene of the arrest to the police station. While driving to the station, Snyder requested that Spencer take him to a nearby hospital for a blood test of his alcohol level. Spencer refused this request, believing that an arrestee was required to submit to a breath test before a blood test could be administered.

At the station, Spencer asked Snyder to take a breath test by blowing into the Intoximeter machine. Snyder made four purported attempts to blow into the machine. However, despite Spencer having twice read the implied consent warnings to Snyder, and despite Spencer's repeated instructions to Snyder about how to blow into the machine's tube and how long to sustain his breath, Snyder never provided an adequate breath sample.

After Snyder had thrice blown unsuccessfully into the tube, Spencer advised him that he could try "one more time." When Snyder again failed to provide an adequate breath sample, Spencer told him, "All right, Dennis, we'll just charge you with refusal." Snyder objected [, claiming that he had followed instructions and blown into the Intoximeter, but that the machine was broken.] He then offered to take the test again: "I'll blow again, ... It's not over, one more time." Spencer had already pressed the print button on the Intoximeter; a further test would have required a five-minute wait. Spencer terminated the session and charged Snyder with DWI and Refusal. A short time later Snyder again requested a blood test; the police again denied his request.[2]

Snyder now claims that he was unable to provide a breath sample because of chest injuries sustained in colliding with the snow bank. A doctor's affidavit confirms that Snyder's ribs were bruised and that one rib may have sustained a hairline crack in the accident. In the doctor's opinion, it is "very possible that a person such as Dennis Snyder who has suffered a bruised chest and/or cracked one or more ribs may experience such pain [as to be] unable to exhale enough air to complete an Intoximeter test." However, it does not appear that the doctor had any familiarity with the Intoximeter machine. Snyder did not seek medical attention for four days after the breath test, and both police officers who interacted with Snyder testified that he never mentioned a chest injury or pain. A half-hour videotape of the tests shows Snyder conversing and walking around the room, but never complaining of chest pain. In the video, he claims to have blown into the Intoximeter and insists that the machine must be broken.[3]

---

**1.** 930 P.2d 1274 (Alaska 1996).

**2.** *Id.* at 1276.

**3.** Not all of Snyder's remarks on the videotape are audible. However, the hearing officer could not, after four viewings, discern any complaints of chest pain.

## B. *Snyder's Criminal Case*

In 1994 Snyder was convicted of DWI and refusal to take a breath alcohol test, and he appealed the convictions to this court. We reversed both Snyder's DWI and refusal convictions and remanded for further proceedings.[4] With regard to Snyder's DWI conviction, we held that the State's failure to honor Snyder's request for an independent blood test violated due process, regardless of whether Snyder refused to take a breath test.[5] We observed that "[a] typical remedy employed in cases where evidence is obtained in violation of a defendant's rights is the exclusion of that evidence."[6] But because there was no evidence to exclude, and because we were not persuaded that outright dismissal of the case was warranted "in light of the fact that the jury convicted Snyder of DWI on the basis of admissible evidence which Snyder had an opportunity to rebut, albeit not with the potentially most exculpatory evidence,"[7] we crafted a different remedy. We ordered that, "on remand, the superior court should presume that the independent blood test Snyder sought, if provided, would have been favorable to him."[8]

We indicated that our reversal on due process grounds of Snyder's DWI conviction was not directly relevant to Snyder's refusal conviction, stating in a footnote that "[r]efusal of the chemical breath test is a criminal act irrespective of any request for or submission to a blood test."[9] However, we reversed the refusal conviction on other grounds: Snyder was improperly denied a jury instruction on the defense of subsequent consent.[10] Because a rational juror could have found that Snyder was sincere in his fifth offer to take the test even if he was not sincere in his first four offers and alleged attempts, we concluded that the superior court erred in refusing to instruct the jury that subsequent consent was a defense to the refusal charge.[11]

Snyder's criminal case was never considered on remand, because of a Criminal Rule 45 error.

## C. *Snyder's License Revocation Case*

The Department of Public Safety revoked Snyder's license based on his refusal to submit to a breath test; Hearing Officer Kathy Kutchins considered the evidence and affirmed the revocation. The hearing officer concluded, based on testimony and the videotape of Snyder's breath tests, that Snyder did not appear to be in pain but rather that he "had no intention of providing a proper breath sample." She also noted that Snyder "never verbally refused the breath test, he simply refused to follow directions" on how to provide a breath sample. Snyder requested reconsideration and submitted additional case law regarding the defense of subsequent consent, but the hearing officer affirmed the revocation. The hearing officer did not consider the presumption that Snyder would have passed a blood test because at the time of the hearing our decision in *Snyder I* had not been published.[12]

Snyder appealed. Superior Court Judge Charles R. Pengilly found that sufficient evidence "beyond any question" supported the hearing officer's finding that unwillingness to provide a sample, and not pain arising from a chest injury, kept Snyder from providing a breath sample. Judge Pengilly rejected all of Snyder's legal arguments.

## III. *STANDARD OF REVIEW*

We review the Department of Public Safety's revocation of a driver's license independently of the superior court, which acted in this case as a court of intermediate

---

4.  *See Snyder I*, 930 P.2d at 1281.

5.  *See id.* at 1278.

6.  *Id.* at 1279.

7.  *Id.*

8.  *Id.*

9.  *Id.* at 1277 n. 3.

10.  *See id.* at 1281.

11.  *See id.*

12.  The hearing was conducted on May 25, 1993, and *Snyder I* was published December 27, 1996. 930 P.2d at 1274.

appeal.[13] We review issues of law not involving agency expertise under a "substitution of judgment" standard.[14] On issues of fact, we review the agency's determination using the substantial evidence test.[15]

## IV.  DISCUSSION

We recently explained in *State, Department of Public Safety v. Shakespeare* the relation between criminal DWI charges and administrative license revocation:

> Under Alaska's implied consent statutes, drivers are considered to have given consent to a breath test. *[See AS 28.35.031(a).]* A law enforcement officer may therefore ask a person to submit to a breath test if the officer has reasonable grounds to believe that the person has operated a vehicle while intoxicated. *[See id.]* If the driver refuses to submit to the test, his or her driver's license may be administratively revoked by the Department of Public Safety and the driver may also be subject to criminal penalties. *[See AS 28.35.031–.032; AS 28.15.165.]* For the department's administrative revocation to be effective, the officer must first read and deliver proper notice to the driver and then must seize the license for delivery to the department. *[See AS 28.15.165(a)-(b).]* The purpose of the administrative revocation statute is to compel drivers to submit to a breath test that provides evidence of intoxication. *[See Lundquist v. Department of Pub. Safety, 674 P.2d 780, 785 (Alaska 1983).]*[16]

Alaska Statute 28.15.165(c) states that if a person has "refused to submit to a chemical test authorized under AS 28.33.031(a) or AS 28.35.031(a) or (g), the department shall revoke the person's license...."

### A.  Snyder Is Estopped from Raising Claims Already Decided in Snyder I.

The State argues that *Snyder I* collaterally estops Snyder from raising any of his claims regarding whether he initially refused the breath test. But Snyder is estopped only from raising those claims already decided in *Snyder I*.

In *Briggs v. State, Department of Public Safety, Division of Motor Vehicles*, we considered the collateral estoppel effect of a criminal DWI case on a subsequent license revocation arising from the same incident.[17] We held that where the criminal case resulted in suppression on due process grounds of the defendant's breath test results, the State was collaterally estopped from relitigating the suppression issue in a subsequent license revocation proceeding.[18] The breath test results deemed inadmissible in the criminal case remained inadmissible in the administrative proceeding.

Similarly, in this case, the parties may not relitigate *Snyder I's* remedial presumption that Snyder's breath test results would have exonerated him of DWI. To the limited extent that this presumption is relevant to Snyder's claim not to have refused the breath test, Snyder is entitled to rely on the presumption.

The State correctly argues, and Snyder concedes in his reply brief, that Snyder is estopped from claiming that his refusal is "negated" by the police's failure to allow an independent blood test. *Snyder I* established the remedy for the state's failure to

---

13.  *See Barcott v. State, Dep't of Pub. Safety, Div. of Motor Vehicles*, 741 P.2d 226, 228 (Alaska 1987).

14.  *See Newmont Alaska Ltd. v. McDowell*, 22 P.3d 881, 883 (Alaska 2001).

15.  *See Borrego v. State, Dep't of Pub. Safety*, 815 P.2d 360, 363 (Alaska 1991).

16.  4 P.3d 322, 324–25 (Alaska 2000) (footnotes omitted).

17.  732 P.2d 1078, 1079 (Alaska 1987). In *Briggs*, we noted three requirements for collateral estoppel: "(1) the issue decided in the prior

adjudication was precisely the same as that presented in the action in question; (2) the prior litigation must have resulted in a final judgment on the merits; and (3) there must be 'mutuality' of parties." *Id.* at 1081. We held that the Department of Public Safety and the State were in privity, and hence satisfied the mutuality of parties requirement for purposes of criminal and license revocation proceedings arising from the same facts. *See id.* at 1082.

18.  *See id.* at 1082–83.

allow an independent blood test: Snyder gained the benefit of a presumption that the blood test results would have been favorable to him.[19] He is thus estopped in this case to the extent that he claims other remedies for the same violation, including dismissal of the case and suppression of evidence.

However, because collateral estoppel applies only to claims that are "precisely the same as [those] presented in the action in question," any other claims raised in this case are not barred.[20]

#### B. Snyder Refused to Take the Breath Alcohol Test.

##### 1. The presumption that Snyder would have passed a blood alcohol test is relevant to, but not dispositive of, his claims in this case.

Because the police violated Snyder's right to due process by refusing him an independent blood test, we ordered in Snyder I that courts apply a presumption that the blood test results would have been favorable to him and thus supported his claim that he was not intoxicated.[21] Snyder now argues that, based on the same due process violation, the hearing officer should have either dismissed his case or applied a presumption in his favor.[22] Because this court in Snyder I already determined the remedy for the same due process violation, Snyder is estopped from claiming dismissal as a new remedy. But Snyder is correct in arguing that the remedial presumption created in Snyder I is relevant to this case.

We explained in Snyder I that "[i]t is a fundamental tenet of due process law that a person accused of a crime has a right to attempt to obtain exculpatory evidence" including an independent blood test.[23] Where denial of that right impairs the defendant's ability to defend himself against more than one charge or in more than one proceeding, the legal remedy for the denial applies to all of those charges and proceedings.[24] Thus, if the blood test which police improperly denied to Snyder might have helped Snyder in this license revocation proceeding, then the remedy for that denial—the presumption of a favorable test result—is relevant to this proceeding as well.

The relevance of blood test results to a refusal case such as this one is somewhat attenuated. In typical refusal cases, independent blood test results might not be relevant at all: a defendant who expressly refuses to submit to a breath test may lose his license regardless of whether he was actually intoxicated[25] or whether he be-

19. See 930 P.2d at 1279.

20. Briggs, 732 P.2d at 1081.

The State argues that Snyder I estops Snyder from arguing that his misunderstanding of the law is a defense to refusal, apparently because Snyder raised this argument in briefs for Snyder I. However, we did not reach or address the misunderstanding argument in Snyder I. Because this issue was not decided in a previous case, Snyder is not estopped from raising it now.

21. See 930 P.2d at 1279. A test result showing blood alcohol level below 0.05 percent does not automatically exonerate a defendant of DWI, but it establishes a presumption that the person is not under the influence of intoxicating liquor. See AS 28.35.033(a)(1).

22. Snyder also claims that evidence of his refusal must be suppressed because the police violated his rights by refusing to let him contact hospital personnel for a blood test. To the extent that he complains of being denied a blood test, Snyder I resolved his claim. To the extent that he claims an independent right to contact hospital person-

nel, the cases he cites do not support him. Whisenhunt v. State, Department of Public Safety, Division of Motor Vehicles, 746 P.2d 1298 (Alaska 1987), and Smith v. State, 948 P.2d 473 (Alaska 1997), both cited by Snyder, concern only the right of an arrestee to contact an attorney under AS 12.25.150.

23. 930 P.2d at 1277–78.

24. See, e.g., Briggs, 732 P.2d at 1082–83 (where criminal DWI case resulted in suppression of the defendant's breath test results on due process grounds, State was collaterally estopped from relitigating the suppression issue in a subsequent license revocation proceeding).

25. As we noted in Snyder I, "[r]efusal of the chemical breath test is a criminal act irrespective of any request for or submission to a blood alcohol test." 930 P.2d at 1277 n. 3. Similarly, AS 28.15.165(c), mandates license revocation for drivers who fail statutorily authorized breath tests or who refuse to submit to the tests—refusal remains a ground for revocation regardless of what the test results would have been.

lieved himself to be intoxicated[26] at the time of refusing. In this case, however, Snyder did not expressly refuse to take the test; rather, he claims that he was physically incapable of giving a breath sample despite good faith efforts to do so. Because there exists in this case a factual question about whether Snyder refused the test—and whether he subsequently consented—the presumption that his blood alcohol test would have favored him might be relevant to refusal. A finder of fact could reasonably consider Snyder's actual intoxication or his likely subjective belief about his intoxication in determining whether Snyder made a good faith effort to provide a breath sample, whether he deliberately failed to provide a sample, and whether any of his five expressions of consent to take the test were genuine.

However, the presumption is in no way dispositive of the case. Contrary to Snyder's argument, a presumption that he would have passed the blood test does not foreclose the conclusion that he refused to take the breath test. And although a factfinder *might* consider blood alcohol results as relevant evidence, the hearing officer's refusal finding in this case did not rest on analysis of Snyder's actual or perceived degree of intoxication. Rather, the hearing officer focused on and resolved the main factual claim raised by Snyder: that Snyder failed to provide a breath sample because he was injured and physically incapable of blowing into the Intoximeter machine.[27] The hearing officer

found that this factual claim was unsupported by the evidence and that the only impediment to Snyder blowing into the machine was his own unwillingness to do so. Because the hearing officer's conclusion that Snyder had refused the test did not depend on whether or not he was intoxicated, it is highly unlikely that the hearing officer's failure to presume favorable blood test results affected her resolution of this case. An error affecting a constitutional right such as the right to due process and presentation of evidence survives appellate review under the "harmless beyond a reasonable doubt" standard if there is not a reasonable possibility that the error affected the result.[28] We find no reasonable possibility that the blood test presumption would have affected the hearing officer's conclusion that Snyder refused a breath test, and therefore conclude that failure to apply the presumption was harmless error.

*2. The hearing officer's conclusion that Snyder refused to take the breath test is not invalidated by Snyder's alleged confusion about his legal obligation to provide a sample.*

Snyder claims that his refusal was predicated on a mistaken belief that he had the option of providing a blood sample instead of a breath sample; he argues that this mistake on his part "negates the requisite intent to refuse." He claims that Trooper Spencer had a duty to inquire into the nature

---

**26.** *See Brown v. State,* 739 P.2d 182, 183 (Alaska App.1987) (defendant may be guilty of criminal refusal to submit to a breath test regardless of whether he believed himself to be intoxicated); *Svedlund v. Municipality of Anchorage,* 671 P.2d 378, 386 (Alaska App.1983) (same); *Jensen v. State,* 667 P.2d 188, 190 (Alaska App. 1983)(same). The crime of refusal has two elements: (1) as *mens rea,* the defendant "must have known, or should have known, that the chemical test of breath or blood was requested as potential evidence in connection with the investigation of a charge that he or she was driving while intoxicated," and (2) as *actus reus,* "the state must show the act of refusing to submit to the test." *Brown,* 739 P.2d at 184–85.

As the court of appeals has noted, this standard is analogous to that applied in evidence-tampering cases: defendants may be convicted of concealing evidence with intent to impair its

availability in an official proceeding or criminal investigation, regardless of whether the concealed evidence was admissible or even material. *See id.* at 184.

**27.** Snyder claimed that he had been in too much pain to give a breath sample: specifically, he asserted that he had complained of his injury to the police, held his side in pain during the breath tests, and coughed up blood in the holding cell after the test. However, both police officers testified that Snyder never mentioned chest pain, and the hearing officer found that at no point in the half-hour video of the breath tests did Snyder complain of pain or hold his sides. Moreover, Snyder was unable to produce the jail intake form to verify his claim of coughing up blood after the test.

**28.** *See Smithart v. State,* 988 P.2d 583, 586, 589 (Alaska 1999).

of Snyder's refusal, and that Spencer breached this duty.[29] But the cases Snyder cites do not establish the existence of such a duty, nor do they provide a defense to refusal in this case. Instead, the cases he cites pertain specifically to arrestees' confusion about *Miranda* rights and breath alcohol tests.[30] The cases did not consider, and their holdings did not extend to, confusion of any other sort.

In *Graham v. State,* a revocation of license case, we considered a defendant's claim that she had believed, based on the *Miranda* notice read by the officer, that she need not respond to his request for an alcohol test.[31] We held that

> where an arrested person refuses to submit to a breathalyzer test, the administering officer must inquire into the nature of the refusal and, if it appears that the refusal is based on a confusion about a person's rights, the officer must clearly advise that person that the rights contained in the *Miranda* warning do not apply to the breathalyzer examination.[32]

We explicitly based our conclusion on the observation that the *Miranda* warning and the implied consent warning, taken together, could invite confusion.[33] This analysis does not indicate that other kinds of confusion necessarily trigger a police duty to inquire[34]—particularly where, as here, the arrestee never indicated to the officer that he believed he had the right to refuse the test. Even in

cases of *Miranda* warning-based confusion, however, the defendant motorist has the burden of showing that he or she was in fact confused.[35] Snyder has made no such showing in this case.

*C. Snyder Did Not Subsequently Consent to the Breath Test.*

Subsequent consent to a breath test can sometimes cure a prior refusal and provide the driver with a defense in license revocation cases. In *Pruitt v. State, Department of Public Safety, Division of Motor Vehicles,* we outlined factors to be considered in cases of subsequent consent: (1) whether the consent occurred within a reasonable time after prior refusal, (2) whether the consent occurred at a time when a breath test would still have been accurate, (3) whether administering the test would have resulted in substantial expense or inconvenience to the police, and (4) whether the arrestee was in custody and under the observation of the arresting officer for the entire time.[36]

In *Snyder I,* we held that the superior court erred in refusing to issue a jury instruction on subsequent consent.[37] The superior court had concluded that if the jury found Snyder's first four expressions of consent to be in sincere, the jury could not reasonably find that Snyder actually consented the fifth time.[38] We reversed because we concluded that the question whether Snyder

---

29. Spencer did not make such an inquiry, perhaps because Snyder neither expressly refused nor indicated that he thought he had a right to do so. Snyder did twice ask what would happen if he refused, to which Spencer responded by reading the implied consent warning. Because the implied consent warning clearly details the legal consequences of refusal to provide a breath sample, it is unclear how Snyder could have believed he had no obligation to give a sample.

30. See *Graham v. State,* 633 P.2d 211, 213–14 (Alaska 1981); *Fee v. State,* 825 P.2d 464, 466 (Alaska App.1992); *Lively v. State,* 804 P.2d 66, 68–69 (Alaska App.1991).

31. 633 P.2d at 215.

32. *Id.*

33. See *id.* at 214–15.

34. Two court of appeals cases have interpreted the *Graham* rule as applying only to defendants whose confusion arose from the *Miranda* warn-

ing. See *Fee,* 825 P.2d at 466–67 ("The *Graham* rule is triggered when a DWI arrestee who has been given *Miranda* warnings refuses to submit to a breath test under circumstances indicating that the refusal may stem from the arrestee's mistaken belief that, under *Miranda,* there is a right to decline the test or to insist on the presence of counsel."); *Lively,* 804 P.2d at 68–69 (holding that officer need not inquire about reasons for a defendant's refusal where defendant was not confused by the *Miranda* warning).

35. See *Graham,* 633 P.2d at 215.

36. 825 P.2d 887, 894 (Alaska 1992); *see also Snyder I,* 930 P.2d at 1280 n. 8 (discussing *Pruitt*).

37. See 930 P.2d at 1281.

38. See *id.* at 1280.

actually consented the fifth time was one for the finder of fact.[39] If the jury had been given a subsequent consent instruction, it "may very well have concluded Snyder's consent was ineffective because his offer was merely another attempt to feign willingness to submit to a breath test, but it was the jury's conclusion to draw."[40] We noted that there was no indication that any of the *Pruitt* factors would weigh against Snyder's subsequent consent defense.[41] Following this ruling, the validity of Snyder's subsequent consent defense depended on the finder of fact's determination whether Snyder's fifth expression of consent was sincere.

In this case, the finder of fact—the hearing officer—found that Snyder "had no intention of providing a proper breath sample." The hearing officer therefore concluded that Snyder's subsequent consent defense failed. As noted above, the *Snyder I* presumption that Snyder would have passed the blood test was potentially relevant to Snyder's claimed subsequent consent, but the hearing officer committed only harmless error by failing to apply the presumption because her conclusions did not depend on whether Snyder was intoxicated.

■ Snyder raises various arguments why his subsequent consent defense should survive the hearing officer's factual finding that he never legitimately consented to the test. The essence of his claim seems to be that because Trooper Spencer did not allow Snyder to retake the test following his fifth expression of consent, there is no way of knowing whether that consent was genuine.[42] Therefore, according to Snyder, the hearing

officer cannot reasonably have concluded that Snyder had no intention of providing a breath sample. But as the superior court pointed out, both the arresting officer and the finder of fact must be able at some point to conclude that an arrestee's consent is insincere without actually giving the arrestee a chance to prove his sincerity by taking the test: "If a defendant's credibility in offering to cure a prior refusal could not be considered, a disingenuous suspect would always prevail . . . [u]nless the arresting officer went through the pointless exercise of repeatedly offering such a defendant another breath test for the full four hours [during which breath tests may be administered under the statute]." Moreover, Snyder's argument suggests that because Trooper Spencer did not administer a fifth breath test, it is impossible to reach a factual finding about whether Snyder would have cooperated and provided a breath sample. But in *Snyder I* we specifically stated that the sincerity of Snyder's consent could be determined by the "weighing of the *bona fides* of Snyder's offer [by] the jury."[43] Because a finder of fact has now determined that Snyder did not genuinely consent to provide a breath sample, his defense of subsequent consent fails.

## V. CONCLUSION

Snyder has not presented a persuasive argument why his refusal to submit to a breath test should be suppressed or excused. The hearing officer's findings that Snyder refused the test and that he did not subsequently consent were based on substantial evidence, and the hearing officer's failure to presume that Snyder would have passed a blood test

39. *See id.* at 1281.

40. *Id.*

41. *See id.*

42. Snyder also argues that inquiry into the arrestee's sincerity is inappropriate here because this court has made no sincerity inquiry in cases involving police denial of an arrestee's request to contact an attorney. But the cases he cites in support of this proposition concern only the statutory right to contact an attorney. As was discussed in footnote 22 above, neither the statute nor cases construing it are germane to this case.

43. *Id.* at 1281.

Snyder also challenges the sufficiency of the evidence underlying the hearing officer's conclusion. His claim seems to be that the only potentially relevant evidence would have been Snyder's actual performance, or failure to perform, when given a fifth chance to take the test. Based on this assumption, he asserts that the hearing officer's decision was not supported by any evidence, but the hearing officer based her ruling on testimony by both police officers involved and on six separate viewings of the video tape. Because Snyder's sincerity in "consenting" to the test is relevant to the defense of subsequent consent, the hearing officer properly relied on this evidence.

was harmless error. Therefore, we AFFIRM the revocation of Snyder's license.

EASTAUGH, Justice, concurring.

Although I agree with the result this court reaches, I write separately to explain why I agree, given my dissent in the opinion that decided Snyder's related criminal matter.[1]

The court concludes here that the hearing officer in Snyder's administrative license revocation proceeding erred by failing to give Snyder the benefit of a presumption that an independent blood test would have been favorable to Snyder.[2] Nonetheless, the court affirms because it holds that the error was harmless.[3]

Snyder's right to that presumption originated in *Snyder v. State (Snyder I)*,[4] this court's opinion in Snyder's criminal appeal. Four members of this court there concluded that the state deprived Snyder of due process when troopers denied his request for an independent blood test.[5] The court therefore reversed Snyder's criminal convictions of DWI and refusal to submit to a breath test and remanded.[6] It required the trial court on remand to remedy the due process violation by applying the favorable-test presumption.[7]

For the reasons I discussed at length in my *Snyder I* dissent,[8] I would have held in that case that Snyder had no due process right to an independent blood test. Because I concluded that the state did not deprive Snyder of due process, I also disagreed with applying a favorable-test presumption on remand.[9]

Were it not for the court's opinion in *Snyder I*, I would again conclude that the state did not deny due process to Snyder and that he was consequently not entitled to a presumption that the results of an independent blood test would have been favorable. Therefore, but for *Snyder I*, I would hold that the hearing officer did not err and I would affirm for that reason.

The doctrine of stare decisis normally compels my adherence to the holding of a prior decision of this court, even one in which I dissented. The state has not asked us to reexamine and overrule *Snyder I*. It has advanced no argument that would permit us to do so. In any event, our prior holding related to Dennis Snyder himself, turned on the identical factual transactions which govern this case, raised the same due process issue Snyder raises here, and created the remedial favorable-test presumption the hearing officer did not apply. Therefore, even assuming stare decisis does not apply, issue preclusion does. *Snyder I* squarely raised and resolved the same two issues— due process deprivation and the remedial presumption—that arise here, and the dispute involved the identical parties and factual transactions. I am therefore compelled to agree that it was error not to give Snyder the benefit of the presumption. And because I also agree that the error was harmless, I agree to affirm the revocation of Snyder's license.

BRYNER, Justice, concurring.

For reasons similar to those expressed by Justice Eastaugh,[1] I concur in the court's judgment.

---

1. *See Snyder v. State (Snyder I)*, 930 P.2d 1274 (Alaska 1996).

2. Op. at 775–777.

3. Op. at 776.

4. 930 P.2d 1274 (Alaska 1996).

5. *See id.* at 1278.

6. *See id.* at 1281.

7. *See id.* at 1279–80.

8. *See id.* at 1281–84 (Eastaugh, J., dissenting).

9. *See id.* at 1283–84 (Eastaugh, J., dissenting).

1. But for the constraint of stare decisis, I would adhere to the views set out in *Snyder v. State*, 879 P.2d 1025 (Alaska App.1994), *rev'd*, 930 P.2d 1274 (Alaska 1996).